**Dennis Ray DRIVER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–08–00522–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

June 9, 2011.

Discretionary Review Refused Jan. 25, 2012.

Patricia Fortney Sedita, Sugar Land, for Appellant.

Kenneth Magidson, Harris County Dist. Atty., Eric Kugler, Asst. Dist. Atty. of Harris County, Houston, for State.

Panel consists of Chief Justice RADACK and Justices BLAND and MASSENGALE.

## OPINION

JANE BLAND, Justice.

A jury convicted Dennis Ray Driver of felony murder, based on the underlying offense of cocaine possession, after Driver's eight-month-old son died of cocaine poisoning while in Driver's care. *See* TEX. PENAL CODE ANN. § 19.02(b)(3) (West

2003). After hearing evidence of Driver's multiple drug convictions, the jury assessed his punishment at life in prison. On appeal, Driver contends that the evidence is legally insufficient to support the jury's findings that he (1) intentionally or knowingly possessed cocaine or (2) committed an act dangerous to human life. He further contends that the trial court erred in failing to instruct the jury on manslaughter and criminally negligent homicide as lesser included offenses to felony murder. We conclude that the evidence is legally sufficient to support the conviction, and that the trial judge did not err in refusing to submit the requested lesser included offenses. We therefore affirm.

## Background

Samantha Cabrera left for work around noon on December 28, 2006, leaving Driver to care for their eight-month-old son at the family's apartment. The baby could roll and scoot around, but was not yet crawling. Driver's sister visited them after lunch. Driver and the baby spent some of the afternoon on the front porch of the apartment. Driver gave the baby a bottle around 9:00 p.m., and they both fell asleep on the couch, with the baby sleeping on his chest. Cabrera returned home between 11:00 and 11:30 p.m. She found Driver asleep, with the baby lying near Driver at the foot of the couch. The baby was not breathing. Cabrera woke Driver. Driver and Cabrera rushed with the baby to a neighbor's apartment to call 911. Cabrera performed CPR until paramedics arrived, but the baby did not respond.

Medical providers declared the baby dead at the hospital at 12:25 a.m. Dr. Sara Doyle performed an autopsy. After reviewing the toxicology reports, she determined that the cause of the baby's death was acute cocaine toxicity, ingested by mouth. The toxicology report reflected that the baby had a lethal amount of cocaine and cocaine metabolite in his stomach and blood stream.[1] Dr. Doyle testified that the child also had a small scrap of wrapping paper in his stomach. She further testified that the elevated levels of cocaine that remained in the baby's stomach at the time of his death indicate that he had ingested the cocaine less than four to six hours before he died.

Investigating officers had searched the apartment on the night of December 28, but they found no cocaine. The officers testified the apartment was clean and decorated for the holidays, and the child appeared well cared for and healthy.

Driver did not testify at trial, but the trial court admitted his statements to investigating officers and the grand jury. First, the State played a recording and circulated a transcript of Sergeant Darrell Robertson's interview with Driver. Driver first denied bringing any drugs into the apartment. He then admitted that the baby had ingested the cocaine "probably from my hands." Driver told the officer that the baby might have eaten residue of rock cocaine off of Driver's hands because "[h]e was teething and he's always biting my hands." He later stated that his hands were "the only way that I see cocaine would be in my baby's system." He also stated that he had never seen Cabrera use cocaine.

Driver defended himself to Robertson, telling him that he washed his hands, although not every day, and that he had not handled any cocaine in a couple of days

---

1. Cocaine metabolite, benzoylecgonine in this case, is the chemical cocaine breaks-down into as the body processes the drug.

before the baby's death, and that he "never [thought] that this would happen."

Second, the State played a recording and transcript of Driver's testimony to the grand jury. In that testimony, Driver admitted to cutting and handling cocaine the day before his son's death. Driver stated he "kept" a couple of stones, around a quarter, of cocaine, in his hand, but he again testified that he never brought the cocaine into the home, and denied placing it in Christmas wrap. Driver further testified he was the only adult present caring for the child that day, though his sister had visited earlier in the day. After the prosecutor suggested that he may have fed the baby cocaine by accident, Driver agreed that he might have had a tiny residue amount of cocaine on his hands that the baby could have ingested when Driver put Ora–Gel in the baby's mouth. He also responded affirmatively to a grand juror's inquiry that the events leading to the baby's death could have happened because Driver was "cutting at the house", and then later picked up the baby because he was in charge of his care and the baby was teething.

At the charge conference, Driver requested instructions on manslaughter and criminally negligent homicide. The trial court denied the requests. The jury found Driver guilty and, in a special issue, found that the cocaine constituted a deadly weapon. At the punishment stage, the trial court admitted Driver's stipulation to seven convictions before and after the baby's death, including three convictions for cocaine possession and one conviction for delivery of cocaine. The jury assessed Driver's punishment at life in prison.

### Felony Murder

A defendant commits felony murder if he "commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual." *See* TEX. PENAL CODE ANN. § 19.02(b)(3) (West 2003). In this case, the State charged Driver with the underlying felony offense of possession of less than 1 gram of cocaine. It further charged that the act clearly dangerous to human life causing the child's death was "allowing the child to ingest cocaine." Driver challenges the sufficiency of the evidence to support the jury's findings that he intentionally possessed cocaine and that he committed an act dangerous to human life.

### A. Standard of Review

When evaluating the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Drichas v. State*, 175 S.W.3d 795, 798 (Tex.Crim.App.2005). The standard is the same for both direct and circumstantial evidence cases. *King v. State*, 895 S.W.2d 701, 703 (Tex.Crim.App.1995). We do not resolve any conflict of fact, weigh any evidence, or evaluate the credibility of any witnesses, as this is the function of the trier of fact. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App.1999).

### B. Legal Possession of Cocaine

A person commits the offense of possession of cocaine if he knowingly or intentionally possesses it in the prescribed amount, by aggregate weight, including adulterants or dilutants. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D) & 481.115 (West 2010). To prove possession,

the State must prove that the accused (1) exercised control, management, or care over the substance and (2) knew the matter possessed was contraband. *Evans v. State*, 202 S.W.3d 158, 161 (Tex.Crim.App. 2006). If a defendant does not have exclusive possession of the place where the contraband is found, then independent facts and circumstances must link him to the drugs. *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex.Crim.App.2005); *Lair v. State*, 265 S.W.3d 580, 585 (Tex. App.-Houston [1st Dist.] 2008, pet. ref'd). "Regardless of whether the evidence is direct or circumstantial, it must establish that the defendant's connection with the drug was more than fortuitous." *Lair*, 265 S.W.3d at 585. Mere presence at the location where drugs are found is thus insufficient, by itself, to establish actual care, custody, or control of those drugs. *Evans*, 202 S.W.3d at 162.

■ Texas courts have set forth a non-exclusive list of possible links to establish a person's knowing possession of contraband. *Lair*, 265 S.W.3d at 586. These links are:

(1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found;

(12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Id.* The number of links is not dispositive, rather the logical force of all of the direct and circumstantial evidence determines possession. *Evans*, 202 S.W.3d at 162.

■ Driver contends the State failed to show that he intentionally and knowingly possessed cocaine on December 28, 2006. He observes that, while he admitted that he had possessed cocaine in the recent past before the homicide, he denied bringing any cocaine into the apartment, and none was found there when police searched it.

We conclude that the logical force of the evidence supports the jury's conclusion that Driver possessed the cocaine that poisoned his son. The State presented evidence Driver was the only adult present during the time that the child ingested cocaine, which had occurred within four to six hours before Cabrera returned home. Neither he nor the baby left the apartment that day except to sit on the front porch. Driver was in proximity to the cocaine for it to be found in the stomach of his eight-month-old son under his exclusive care. During the relevant time, Driver was in the sole possession of the enclosed area of the apartment where the child ingested the cocaine. Although Driver denied bringing cocaine into the apartment, he spent a good bit of the afternoon outside the apartment on the front porch, with the baby in his lap.

Driver also made incriminating statements, some of them under oath. The jury heard Driver's admissions to Sgt. Robertson and the grand jury that he had handled and cut cocaine within a day or two of his son's death. The jury heard

him admit to the grand jury that "I had, like, a couple of stones, like a quarter," that he kept in his hand. Driver also stated that they only way he could conceive how the baby ate cocaine was that cocaine residue remained on his hands.

The contrary evidence does not negate the logical force of these links so as to set aside the jury's verdict. Driver observes that law enforcement officers did not find any evidence of cocaine in the apartment. And, Driver never admitted bringing drugs into the apartment. Although Driver denied bringing his drugs home, the jury could have accepted his admissions that he regularly possessed cocaine and literally kept some in his hand, including the night before the baby's death, but reject his statement that he did not keep it at the apartment or handle it that evening, given the evidence that the baby ingested it while in Driver's care. Driver also admitted that he had spent time that day on the front porch outside the apartment, holding the child in his lap. We defer to the jury's resolution of the conflict between Driver's statement as to the timing of his cocaine possession, and the autopsy evidence that the child ate cocaine while in Driver's sole care. *See Dewberry*, 4 S.W.3d at 740. We hold that the logical force of Driver's admissions and his presence as the only adult when the baby ingested cocaine provide legally sufficient evidence that he possessed cocaine on the night in question. *See Evans*, 202 S.W.3d at 162.

### C. Act Clearly Dangerous to Human Life

■ Driver asserts the State failed to present any evidence that he committed an "act" clearly dangerous to human life in connection with his possession of cocaine. He relies on the Penal Code definition of an act that requires bodily movement. *See* Tex. Penal Code Ann. § 1.07(a)(1) (West Supp. 2010). He asserts that mere possession does not constitute an act clearly dangerous to human life.

We disagree that the possession of cocaine as an underlying felony to felony murder forecloses proof of bodily movement that constitutes an act clearly dangerous to human life, or as the State charged in this case, "allowing" a child to ingest cocaine. In this case, the jury heard testimony of the limited window of time in which the baby ingested cocaine and the fact that Driver was the only adult present. The jury heard Driver's admission to handling and cutting cocaine either a day or two days before his son's death, and his acknowledgement that the baby could have ingested cocaine residue from Driver's hands. Conduct that might not be dangerous to an adult can be clearly dangerous to a young child. *See King v. State*, No. 05–08–01716–CR, 2010 WL 2293418, at *3 (Tex.App.-Dallas June 9, 2010, pet. dism'd untimely filed) (mem. op., not designated for publication) (leaving 10–month–old unattended in filling bathtub constitutes act clearly dangerous to human life).

Here, there is a causal nexus between the possession of cocaine and the death. Driver's act of handling cocaine and placing the child in the proximity of it—so as to allow the child to eat it—was a clearly dangerous act. Sgt. Robertson testified that cocaine is a deadly weapon: he has "seen it kill many people". Viewing the evidence in the light most favorable to the verdict, the State presented sufficient evidence such that a rational jury could find Driver handled cocaine in a manner so that his infant son could eat it, and that he placed the child in a dangerous proximity to his possession of it. We hold that this evidence meets the statutory definition of an "act clearly dangerous to human life." *See Christian v. State*, 286 S.W.3d 63, 66

(Tex.App.-Texarkana 2009, pet. ref'd.) (holding that definition of felony in felony murder statute allows delivery of cocaine to be underlying felony); *Nevarez v. State,* 847 S.W.2d 637, 643 (Tex.App.-El Paso 1993, pet. ref'd) (upholding as legally sufficient evidence felony possession of marijuana as underlying felony under felony murder rule); *see also State v. Bankert,* 117 N.M. 614, 621, 875 P.2d 370 (1994) (upholding possession with intent to distribute as underlying felony for felony murder); *State v. Jacques,* 270 Kan. 173, 181, 14 P.3d 409 (2000) (same, and concluding that cocaine possession is a "forcible felony" precluding self-defense instruction).[2]

Driver responds that contrary evidence negates Driver's possession as the act that caused the child's death. For example, he observes, the child could have ingested the cocaine from a pacifier found on the floor near the couch, if that pacifier had come in contact with cocaine on the floor or from another source. Such speculation is not supported by the evidence: no cocaine was found in the house, and Driver admitted that the "only way" he knew that the baby could have ingested cocaine was from Driver's hands. We hold the evidence was legally sufficient to support the jury's findings that Driver's possession of cocaine, together with his placing his son in circumstances that allowed his son to ingest it, constitute actions that were clearly dangerous to his son's life. *Cf. Garcia v. State,* 16 S.W.3d 401, 405 (Tex.App.-El Paso 2000, pet. ref'd) ("Texas case law is replete with holdings that when an adult defendant has had sole access to a child at the time its injuries are sustained, the evi-

dence is sufficient to support a conviction for injury to a child, or murder if the child dies.") (collecting cases).

**Lesser Included Offense Instructions**

■■■ Driver contends the trial court erred by denying his request for a jury instruction on manslaughter and criminally negligent homicide as lesser included offenses. We use a two-step analysis to determine whether an appellant is entitled to a lesser included offense instruction. *Hall v. State,* 225 S.W.3d 524, 528 (Tex. Crim.App.2007); *Rousseau v. State,* 855 S.W.2d 666, 672–73 (Tex.Crim.App.1993). First, an offense is a lesser included offense if (1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged; (2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest suffices to establish its commission; (3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or (4) it consists of an attempt to commit the offense charged or an otherwise included offense. *See* TEX.CODE CRIM. PROC. ANN. art. 37.09 (West 2006). We compare the elements of the offense as they are alleged in the indictment or information with the elements of the potential lesser included offense. *Hall,* 225 S.W.3d at 535–36.

■■■ Second, some evidence must exist in the record that would permit a rational jury to find the defendant is guilty only of the lesser offense, if he is guilty at all. *Hall,* 225 S.W.3d at 536; *Salinas v.*

---

**2.** We publish this case in part because there is little published authority in this area. In an unpublished opinion, our court upheld a felony murder conviction based on an underlying cocaine possession offense in a case in which the defendant confessed to police that she had

injected cocaine into the decedent while in the course of possessing and delivering cocaine. *See Stanford v. State,* 01–87–00899–CR, 1988 WL 113997 at *2 (Tex.App.-Houston [1st Dist.] Oct. 27, 1988, pet. ref'd.) (mem. op., not designated for publication).

*State,* 163 S.W.3d 734, 741 (Tex.Crim.App. 2005); *Rousseau,* 855 S.W.2d at 672–73. There must be some evidence from which a rational jury could acquit the appellant of the greater offense while convicting him of the lesser included offense. *Moore v. State,* 969 S.W.2d 4, 8 (Tex.Crim.App. 1998). The court may not consider whether the evidence is credible, controverted, or in conflict with other evidence. *Id.* Anything more than a scintilla of evidence entitles a defendant to a lesser charge. *Hall,* 225 S.W.3d at 536.

In examining the first step, we look to the definitions of manslaughter and criminally negligent homicide. Penal Code Section 19.04(a) defines manslaughter as recklessly causing the death of an individual. TEX. PENAL CODE ANN. § 19.04(a) (West 2003). Under Texas Penal Code § 6.03(c),

[a] person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX. PENAL CODE ANN. § 6.03(c) (West 2003).

Section 19.05 defines criminally negligent homicide as causing the death of another death by criminal negligence. *See* TEX. PENAL CODE ANN. 19.05 (West 2003). Under Texas Penal Code § 6.03(d),

[a] person acts with criminal negligence . . . with respect to . . . the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that . . . the result will occur. The risk must be of such a nature and degree that the

failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

*See* TEX. PENAL CODE ANN. § 6.03(d) (West 2003). Felony murder, in comparison, is the commission of a killing while in the course of committing another felony, coupled with committing or attempting to commit an act "clearly dangerous to human life." *Compare* TEX. PENAL CODE ANN. § 19.02(b)(3) *with* TEX. PENAL CODE ANN. §§ 19.04. 19.05 & 6.03(c) & (d).

Felony murder is an unintentional murder committed in the course of committing a felony. *Threadgill v. State,* 146 S.W.3d 654, 665 (Tex.Crim.App.2004). The state must prove the elements of the underlying felony, including the culpable mental state for that felony, but no culpable mental state is required for the murder committed. *Lomax v. State,* 233 S.W.3d 302, 306–07 (Tex.Crim.App.2007). In *Lomax,* the Court of Criminal Appeals overruled its prior precedent holding that Section 19.02(b)(3) required a culpable mental state, and that the underlying felony must supply it. *Id.* (holding that felony DUI, strict liability offense, can be underlying felony to felony murder conviction because felony murder does not require proof of any mental state associated with causing death of another). The *Lomax* court concluded that the plain language of the felony murder statute required proof of the underlying felony, but does not require any proof of an accompanying mental state with regard to either causing the death of another or committing an act clearly dangerous to human life. *See id.* at 307 & n.16; *see also* TEX. PENAL CODE ANN. § 19.02(b)(3) (West 2003). The *Lomax* court held that a strict liability felony offense can support a felony murder conviction, and in a footnote observed that the

"clearly dangerous" aspect of the requirement of an "act clearly dangerous to human life" carries with it no requirement of a culpable mental state. *Lomax*, 233 S.W.3d at 307 & n. 16 (citing *Lugo–Lugo v. State*, 650 S.W.2d 72, 81 (Tex.Crim.App. 1983)).

Driver relies on *Kuykendall v. State* to contend that criminally negligent homicide can be lesser included offenses to felony murder. *See* 609 S.W.2d 791, 796 (Tex. Crim.App.1980), *overruled on other grounds by Cook v. State*, 858 S.W.2d 467 (Tex.Crim.App.1993). But in *Lomax*, the Court of Criminal Appeals rejected the very transferred intent analysis and caselaw on which *Kuykendall* relied in holding that negligent homicide could be a lesser included offense of felony murder. *Compare Lomax*, 233 S.W.3d at 307 (overruling *Rodriquez v. State* and holding that a transferred intent theory does not apply in felony murder cases) *with Kuykendall*, 609 S.W.2d at 794–95 (relying on *Rodriquez v. State* to hold that criminally negligent homicide can be a lesser included offense to a felony with a greater mens rea under a theory of transferred intent). Given the Court of Criminal Appeals' disavowal in *Lomax* of the caselaw and theory on which *Kuykendall* was based, we reject Driver's contention that *Kuykendall* required the trial court in this case to submit Driver's requested lesser included offenses.

Rather, this Court, as well as our sister court in Austin, have held that the reasoning in *Lomax* dictates that manslaughter and criminally negligent homicide cannot be a lesser included offense of felony murder because the former offenses carry with them elements of proof a reckless mental state or ignorance of a substantial and unjustifiable risk, respectively, in causing another's death; in contrast, felony murder requires proof of neither. *See Hernandez v. State*, No. 03–08–00170–CR, 2010 WL 1632627, *10 (Tex.App.-Austin Apr. 23, 2010, no pet.) (mem. op., not designated for publication) (upholding trial court's refusal to submit manslaughter and criminally negligent homicide as lesser included offenses of felony murder because "the State was not required to prove appellant's culpable mental state with regard to either (1) the child's death or (2) the act clearly dangerous to human life"); *Klepper v. State*, No. 01–07–00783–CR, 2009 WL 1635133, *7 (Tex.App.-Houston [1st Dist.] June 11, 2009, pet. ref'd) (mem. op., not designated for publication) (upholding trial court's refusal to submit manslaughter as lesser included offense of felony murder); *see also Wooten v. State*, 267 S.W.3d 289, 305 (Tex.App.-Houston [14th Dist.] 2008, pet. ref'd) (concluding that criminally negligence homicide cannot be lesser included offense of intoxication manslaughter because latter requires no culpable mental state in causing death of individual).[3]

Under *Lomax*, felony murder requires no culpable mental state in causing the death of an individual. *See Lomax*, 233 S.W.3d at 307. Manslaughter requires proof of recklessness in causing the death of an individual, a mental state not required to prove felony murder. Accordingly, we hold that manslaughter is not a lesser included offense of felony murder. *See Hall*, 225 S.W.3d at 535–36; *Klepper*, 2009 WL 1635133, at *7. Thus, the trial court did not abuse its discretion in refusing the defense's request to submit it.

Similar reasoning applies to the submission of criminally negligent homicide as a lesser included offense. Criminally negligent homicide requires proof that the defendant caused the death of another due to

**3.** We cite to the unpublished decisions in *Hernandez* and *Klepper* because they are the only post-*Lomax* authorities to address this issue, and we publish this opinion.

his criminal negligence, a finding not required to prove felony murder. *See Hernandez*, 2010 WL 1632627, at *10. Accordingly, we hold that the trial court did not abuse its discretion in refusing to instruct the jury on a lesser included offense of criminally negligent homicide.

The *Hernandez* decision is particularly applicable here. In that case, the Austin Court of Appeals rejected the argument that criminally negligent homicide can be lesser included offenses to felony murder based on injury to a child, observing that the elements of negligent homicide require proof that the defendant caused another's death by criminal negligence. *Id.* Because such a conviction requires a finding that the defendant caused another's death due to his criminal negligence, criminally negligent homicide cannot be proved by the same or less facts than those required to prove felony murder—which requires no finding of negligence in connection with causing another's death so long as it is related to the commission of an underlying felony.

We hold that Driver did not meet the first prong of the *Hall* test with respect to his requested instructions because neither manslaughter nor criminally negligent homicide qualify as lesser included offenses of felony murder, as both of these offenses contain an element of proof that felony murder does not require. *See Hall*, 225 S.W.3d at 535–36. Accordingly, the trial court did not err in denying Driver's request for instructions on manslaughter and criminally negligent homicide as a lesser included offense of felony murder.

## Conclusion

We hold that the evidence was legally sufficient to support the conviction for felony murder. We further hold that the trial court did not err by denying the request for manslaughter and criminally negligent homicide instructions. We therefore affirm the judgment of the trial court.