Opinion issued
October 20, 2011



In
The

Court of
Appeals

For
The

First District
of Texas

————————————

NO. 01-10-00547-CR

———————————

GENNY GRANADOS, Appellant

V.

THE
STATE OF TEXAS, Appellee



 



 

On Appeal from the 174th
District Court 

Harris County, Texas



Trial Court Case No. 1260935

 



 




 

 

MEMORANDUM
OPINION

          A
jury found appellant, Genny Granados, guilty of the offense of felony murder.[1]  The jury assessed appellant’s punishment at
50 years in prison.  In six issues,
appellant asserts as follows: (1) the State improperly prosecuted her under the
felony murder doctrine; (2) she was denied effective assistance of counsel at
trial; and (3) the evidence is insufficient to support the judgment of
conviction.  

          We
affirm.

Background

          On
February 9, 2008, appellant called her neighbor, Oscar Lopez, complaining that
she had stomach pain.  After about three
hours, Lopez drove appellant to Memorial Hermann Southwest Hospital.  When they arrived, Lopez got a wheelchair from
the hospital and took appellant into the emergency room.  They were greeted by a hospital clerk, Sandra
Richards.  Richards commented that appellant
was pregnant.  Appellant responded that
she was not pregnant.  Richards then sent
appellant to the waiting room.  After a
short time, appellant asked Lopez to take her to the restroom.  

After 10 to 15 minutes, Lopez
became concerned and knocked on the bathroom door.  Appellant told Lopez to wait.  After another five or ten minutes had passed,
appellant opened the door. Lopez saw blood on the bathroom floor, walls, and on
appellant’s clothing.  Lopez became
frightened and returned appellant to the waiting room.  

          The
hospital housekeeper, Patricia James, was paged to clean the bathroom.  It took James approximately 20 minutes to
clean the blood from the walls, floor, and sink.  James also emptied the bathroom’s trash
can.  James then cleaned two other nearby
restrooms.  

James saw appellant near the
restrooms.  She noticed that there was a
blood trail from the wheels of appellant’s wheelchair.  

          James
took the trash bags that she had collected from the restrooms to the hospital
“soil room” to dispose of them.  She
noticed that the bag that she had collected from first bathroom felt
heavy.  She lifted the bag from the
bottom and felt what she believed to be “little bones.”  James contacted another housekeeper to feel
the bag as well.  The women then
contacted the emergency room charge nurse, Gwen Lantz.  The nurse opened the trash bag and discovered
a baby boy covered in bloody paper towels. 


          Nurse
Lantz detected that the baby had a faint heartbeat.  She took the baby to one of the emergency
room doctors, who began resuscitation. 
The baby was transported to another hospital in the medical center for
care.  

          A
hospital employee, Carlos Rozan, who speaks fluent Spanish, was asked by
medical personnel to speak to appellant, who is Spanish-speaking.  Although she denied it initially, appellant admitted
that she had given birth at the hospital. 
When Rozan inquired why appellant had not notified medical personnel that
she was in labor, appellant replied that she already had two children, she did not
want another child, and had no intention of keeping the baby. 

          Appellant
was admitted to the hospital.  An exam
revealed that she had recently given birth. 


          Officer
D. Morelli of the Houston Police Department was dispatched to the hospital and
spoke with appellant.  Appellant told Officer
Morelli that she had given birth to a baby in the bathroom.  She stated that she had cut the umbilical cord
with scissors that she had in her purse.  Appellant told the officer that she had grabbed
the trash bag out of the trash can, removed all of the trash, put the baby in
the bag, placed the trash on top of the baby, tied up the bag, and placed it
back in the trash can.

          The
baby boy, named David, lived 10 days at the hospital before he died.  An autopsy determined that the cause of his
death was “complication of hypoxic encephalopathy due to hypovolemic shock with
environmental exposure subsequent to neglect and abandonment afterward
unassisted term delivery.”  The
assistance medical examiner would testify at trial “that means that because the
baby had been unattended, the cord had been cut, and the baby had been left out
with no care provided, as well as medical assessment, that the baby went into
shock.  And because of the shock, the
brain lost oxygen and several of his organs failed and he contracted an
infection which ultimately took his life.” 
The assistant medical examiner agreed that, besides the effects of the
neglect and abandonment, David appeared otherwise to be a normally developed,
healthy baby.  The doctor stated that the
autopsy revealed no other medical condition or abnormality that would explain David’s
death.

          Appellant
was indicted for the offense of felony murder. 
The indictment alleged as follows:

Genny Granados, hereafter styled the Defendant,
heretofore on or about FEBRUARY 9, 2008, did then and there unlawfully,
intentionally and knowingly commit and attempt to commit the felony offense of
ABANDONING A CHILD by having care, custody and control of BABY BOY GRANADOS
a.k.a. DAVID GRANADOS, a child younger than fifteen years of age and hereafter
called the Complainant, and did intentionally abandon the Complainant in a
TRASH RECEPTACLE under circumstances that exposed the Complainant to an
unreasonable risk of harm and without the intent to return for the Complainant,
and the Defendant did not voluntarily deliver the Complainant to a designated emergency
infant care provider under Section 262.302 of the Texas Family Code and while
in the course of and furtherance of the commission and attempted commission of
the felony offense of ABANDONING A CHILD did commit an act clearly dangerous to
human life, to wit: FAILING TO SEEK PROPER MEDICAL CARE FOR THE COMPLAINANT FOLLOWING THE
COMPLAINAN’S BIRTH AND BY PLACING THE COMPLAINANT IN A TRASH RECEPTACLE
FOLLOWING HIS BIRTH and did thereby cause the death of the Complainant.

 

The jury found appellant
guilty as charged in the indictment and assessed punishment at 50 years in
prison.  This appeal followed.

Murder Predicated on Felony Offense
of Abandoning a Child

          In
her first issue, appellant asserts, “The State cannot use the underlying
offense of abandoning a child to ‘bootstrap’ its prosecution into one for
felony murder . . . .”  Appellant argues
that the act forming the offense of abandoning a child—leaving newborn David in the trash
can without medical care—is the same act relied on by the State to prove
appellant’s commission of “an act clearly dangerous to human life,” a required element
of felony murder.  See Tex. Penal Code Ann.
§ 19.02(a)(3) (Vernon 2011).  Appellant
asserts, “There must be a showing of felonious criminal conduct and an act
clearly dangerous to human life that causes the death of an individual.”  In short, appellant contends that the act
constituting the underlying felony and the act “clearly dangerous to human life”
cannot be the same act.[2]  

To preserve a complaint for
our review, a party must have presented to the trial court a timely request,
objection, or motion that states the specific grounds for the desired ruling if
they are not apparent from the context of the request, objection, or motion.  Tex. R.
App. P. 33.1(a)(1); Layton v.
State, 280 S.W.3d 235, 238–39 (Tex. Crim. App. 2009).  As the State points out, appellant did not object
in the trial court that the offense of child abandonment cannot serve as the
underlying offense for felony murder.  Thus,
the issue has not been preserved for our review.  See Tex. R. App. P. 33.1(a)(1).  If an issue has not been preserved for appeal, we should not
address it.  See Ford v. State, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009).  Accordingly, we overrule appellant’s first issue.

Ineffective Assistance of
Counsel

          In
her second, third, and fourth issues, appellant contends that she received
ineffective assistance of counsel at trial. 


A.      Applicable Legal Principles

The Sixth Amendment to the
United States Constitution guarantees the right to reasonably effective
assistance of counsel in criminal prosecutions.  See U.S. Const. amend. VI.  To show ineffective assistance of counsel, a
defendant must demonstrate both (1) that his counsel’s performance fell below
an objective standard of reasonableness and (2) that there is a reasonable
probability that, but for counsel’s unprofessional errors, the result of the
proceeding would have been different.  Strickland v. Washington, 466 U.S. 668,
687–88, 694, 104 S. Ct. 2052, 2064, 2068 (1984); Andrews v. State, 159 S.W.3d 98, 101–02 (Tex. Crim. App. 2005).  A failure to make a showing under either prong
defeats a claim of ineffective assistance of counsel.  Rylander
v. State, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003).

An appellant bears the
burden of proving by a preponderance of the evidence that his counsel was
ineffective.  Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).  Any allegation of ineffectiveness must be
firmly founded in the record, and the record must affirmatively demonstrate the
alleged ineffectiveness.  Id. at 814.  We presume that a counsel’s conduct falls
within the wide range of reasonable professional assistance, and we will find a
counsel’s performance deficient only if the conduct is so outrageous that no
competent attorney would have engaged in it.  Andrews,
159 S.W.3d at 101.

B.      Analysis

          Here, the record shows that appellant’s motion for new trial
did not contain an ineffective assistance of counsel claim.  

 

 

          1.       Mitigating
Evidence

In her second issue, appellant
first asserts that counsel was aware of “mitigating evidence” that he failed to
develop and offer during the punishment phase of trial.  Specifically, appellant contends that counsel
should have offered evidence showing (1) she suffers from mental illness and (2)
she appeared to be confused and mentally unstable on the night of the baby’s
birth.  She points to two post-indictment
competency evaluations performed by a psychiatrist and to her jailhouse medical
records.  The competency evaluations,
which are contained in the clerk’s record, indicate that appellant suffers from
mental illness for which she takes medication. 


Appellant also points to two
Brady notices from the State disclosing
that an attending doctor and a hospital employee has stated that appellant
exhibited signs of mental instability on the night of the baby’s birth.  Appellant asserts that counsel should have
subpeoned the psychiatrist, who performed the competency evaluations, and the witnesses
identified in the Brady notices to
testify regarding appellant’s mental status. 
She contends that counsel’s failure to develop and offer this
“mitigating evidence” likely had had a negative effect on her sentencing.  

The record is silent
regarding (1) trial counsel’s reasons for not calling the witnesses; (2)
whether the witnesses were available; or (3) what the witnesses’ testimony
would have been.  “Counsel’s failure to
call witnesses at the guilt-innocence and punishment stages is irrelevant
absent a showing that such witnesses were available and appellant would benefit
from their testimony.”  King v. State, 649 S.W.2d 42, 44 (Tex. Crim.
App. 1983).  Appellant has not made such
showing.  

In short, appellant has not shown that trial counsel
did not make a sound strategic decision to forego subpoenaing the mental health
witnesses and offering her medical records. 
See Lopez v. State, 343 S.W.3d
137, 143–144 (Tex. Crim. App. 2011).  We cannot conclude that counsel’s performance
was so outrageous that no competent counsel would have engaged in it.  See
id.  Accordingly, we overrule appellant’s second issue.  

2.       Appellant’s Disruptive Conduct

          Appellant
contends that counsel failed to render effective assistance because he did not
take appropriate action when she was disruptive during various stages of trial.  During voir dire, appellant made an outburst
in Spanish.  At the request of defense
counsel, the trial court instructed the venire to disregard appellant’s
outburst.  Later, appellant “shot the
finger” at one of the State’s witnesses when the witness identified
appellant.  The record reflects that,
following that incident, defense counsel told the trial court that he had
admonished appellant not to engage in disruptive conduct.  During the State’s closing argument,
appellant stated, “Fuck you, fuck you” and continued to speak in Spanish,
presumably in earshot of the jury.  The
record does not reflect that any objection was made to the outburst.

          Appellant
also points out that the record reflects that she removed her headphones,
through which she was receiving a Spanish translation of the proceedings, for a
portion of the trial.  The record shows that
a discussion regarding appellant’s removal of her headphones was held outside
the presence of the jury.  The record
reflects that trial counsel told appellant that it was important to wear the
headphones. 

          Appellant
asserts that her counsel should have moved to quash the jury panel after
appellant’s outburst during voir dire. 
She contends that trial counsel also should have requested the trial
court to instruct the jury to disregard appellant’s other disruptive courtroom behaviors
and sought a mistrial based on the conduct.  

          Appellant
has not shown that the trial court would have erred had it denied a request for
an instruction to disregard or a motion for mistrial.  See
Vaughn v. State, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996) (holding that,
before court will sustain ineffective-assistance claim based on counsel’s
failure to make objection at trial, an appellant must show trial court would
have erred by overruling objection); see
also Mooney v. State, 817 S.W.2d 693, 698 (Tex. Crim. App. 1991) (stating,
in effective-assistance context, that counsel is not required to file futile
motions).  Appellant’s trial counsel may
have been aware that a trial court is not required to reward a defendant for
engaging in disruptive behaviors during trial. 
See Molina v. State, 971
S.W.2d 676, 682 (Tex. App.—Houston [14th Dist.] 1998, pet. ref’d) (holding no
error to deny mistrial when defendant made such repeated outbursts during voir
dire that court ordered him bound and gagged); see also Illinois v. Allen, 397 U.S. 337, 346, 90 S. Ct. 1057, 1062
(1970) (holding that a defendant cannot be permitted by his disruptive conduct
to avoid being tried on the charges brought against him).  

          The
State posits that counsel may have made a strategic decision not to request an
instruction to disregard or move for mistrial each time appellant misbehaved
because he did not want to draw further attention to appellant’s antics.  In any event, the record is silent regarding
why trial counsel handled appellant’s disruptive behavior in the manner that he
did.  Because the record is not developed
on this point, we conclude that appellant has not shown that trial counsel’s
performance fell below an objective standard of reasonableness.  See Strickland,
466 U.S. at 687–88, 104 S. Ct. at 2064; see
also Lopez, 343 S.W.3d at 143–44. 

          We
overrule appellant’s second issue. 

          3.       Appointment
of Expert Witnesses

Appellant also asserts that trial
counsel “failed to request that the trial court appoint the defense necessary
defense experts.”  Specifically,
appellant contends that trial counsel should have sought appointment of experts
to testify regarding what the effect of appellant’s blood loss and pain may
have had on her mental state on the night that she gave birth.  

          The
record was not developed in the trial court to show how the medical experts
cited by appellant would have aided her defense.  To establish ineffective assistance predicated
on counsel’s failure to present additional evidence, including expert
testimony, appellant must show in the record what evidence was available and
how it would benefit the appellant.  See King, 649 S.W.2d at 44.  We will not hold that counsel was ineffective
for failing to request the appointment of an expert when the record does not demonstrate
that the expert would have benefitted appellant’s defense.  See Brown
v. State, 334 S.W.3d 789, 803 (Tex. App.—Tyler 2010, pet. ref’d) (“[T]he failure to request
the appointment of an expert witness is not ineffective assistance in the
absence of a showing that the expert would have testified in a manner that
benefitted the defendant.”); Cate v.
State, 124 S.W.3d 922, 927 (Tex. App.—Amarillo 2004, pet. ref’d) (same); see also Teixeira v. State, 89 S.W.3d
190, 193–94 (Tex. App.—Texarkana
2002, pet. ref’d) (holding appellant did not prove ineffective assistance based
on counsel’s failure to call sexual assault expert to testify regarding likelihood
of reoffending when there was no showing in the record that an expert would
have testified to appellant’s benefit).  

          Moreover,
the record shows that trial counsel cross-examined two of the State’s medical
witnesses regarding the effect of pain and blood loss on a person’s ability to
think clearly and rationally.  One of
these witnesses, the emergency room doctor on duty on the night of incident,
testified that blood loss can affect a person’s mental capacity and ability to
reason.  Trial counsel may have taken the
strategic risk that testimony regarding the effects of blood loss and pain would
be more powerful coming from the State’s witnesses than from a hired defense
expert.  

“If counsel’s reasons for his
conduct do not appear in the record and there is at least the possibility that
the conduct could have been legitimate trial strategy, we will defer to counsel’s
decisions and deny relief on an ineffective assistance claim on direct appeal.”  Ortiz
v. State, 93 S.W.3d 79, 88–89 (Tex. Crim. App. 2002). Appellant has failed to present a
record showing that the lack of defense experts was not the product of a legitimate
strategic decision, and we cannot conclude that counsel’s performance in this
regard was so outrageous that no competent counsel would have engaged in it.  See
Lopez, 343 S.W.3d at 143–44.  

We overrule appellant’s fourth issue.  

Sufficiency of the Evidence

          In
her fifth and sixth issues, appellant contends that the evidence was legally
and factually insufficient to support her conviction for felony murder.  

          A.      Standard of Review

This Court reviews
sufficiency-of-the-evidence challenges applying the same standard of review,
regardless of whether an appellant presents the challenge as a legal or a
factual sufficiency challenge.[3]  See
Ervin v. State, 331 S.W.3d 49, 53–54 (Tex. App.—Houston [1st Dist.] 2010, pet. ref’d) (construing
majority holding of Brooks v. State, 323
S.W.3d 893 (Tex. Crim. App. 2010)).  This
standard of review is the standard enunciated in Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789
(1979).  See id.  Pursuant to this
standard, evidence is insufficient to support a conviction if, considering all
the record evidence in the light most favorable to the verdict, no rational
fact finder could have found that each essential element of the charged offense
was proven beyond a reasonable doubt.  See Jackson, 443 U.S. at 319, 99 S. Ct. at
2789; In re Winship, 397 U.S. 358,
361, 90 S. Ct. 1068, 1071 (1970); Laster
v. State, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  We can hold evidence to be insufficient under
the Jackson standard in two
circumstances: (1) the record contains no evidence, or merely a “modicum” of
evidence, probative of an element of the offense, or (2) the evidence
conclusively establishes a reasonable doubt.  See
Jackson, 443 U.S. at 314, 318 n. 11, 320, 99 S. Ct. at 2786, 2789 n.11; see also Laster, 275 S.W.3d at 518; Williams, 235 S.W.3d at 750.

The
sufficiency-of-the-evidence standard gives full play to the responsibility of
the fact finder to resolve conflicts in the testimony, to weigh the evidence,
and to draw reasonable inferences from basic facts to ultimate facts.  See
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  An appellate court presumes that the fact
finder resolved any conflicts in the evidence in favor of the verdict and
defers to that resolution, provided that the resolution is rational.  See
Jackson, 443 U.S. at 326, 99 S. Ct. at 2793.  In viewing the record, direct and
circumstantial evidence are treated equally; circumstantial evidence is as
probative as direct evidence in establishing the guilt of an actor, and
circumstantial evidence alone can be sufficient to establish guilt.  Clayton,
235 S.W.3d at 778.  Finally, the
“cumulative force” of all the circumstantial evidence can be sufficient for a
jury to find the accused guilty beyond a reasonable doubt.  See
Powell v. State, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

B.      Law of the Offense 

          Felony
murder is an unintentional murder committed in the course of committing a
felony.  Threadgill v. State, 146 S.W.3d 654, 665 (Tex. Crim. App. 2004).  More particularly, the Penal Code provides
that a person commits the offense of murder if the person “commits or attempts
to commit a felony, other than manslaughter, and in the course of and in
furtherance of the commission or attempt, or in immediate flight from the
commission or attempt, he commits or attempts to commit an act clearly
dangerous to human life that causes the death of an individual.”  See Tex. Penal Code Ann. § 19.02(a)(3) (Vernon 2011).  Here,
the indictment identified the act clearly dangerous to human life causing the complainant’s
death as “failing to seek proper medical care for the complainant following the
complainant’s birth and by placing the complainant in a trash receptacle
following his birth and did thereby cause the death of the complainant.”  

          To
support the offense of felony murder, the State charged appellant with the
underlying felony offense of abandoning a child.  Under Penal Code section 22.041, a person
commits the offense of abandoning a child “if having custody, care, or control
of a child younger than 15 years, [she] intentionally abandons the child in any
place under circumstances that expose the child to an unreasonable risk of
harm.  Tex.
Penal Code Ann. § 22.041(b) (Vernon 2011).  To abandon “means to leave a child in any
place without providing the youth reasonable and necessary care, under
circumstances which no reasonable, similarly situated adult would leave a child
of that age and ability.”  Id. § 22.041(a).  Penal Code section 22.041 does not apply when
“the actor voluntarily delivered the child to a designated emergency infant
care provider under Section 262.302, Family Code.”  Id.
§ 22.041(h).  The Family Code
defines a hospital as “a designated emergency infant care provider.”  Tex. Fam.
Code Ann. §262.301 (Vernon 2008).

B.      Analysis

          In
her fifth issue, appellant generally avers that the evidence was not sufficient
to establish the predicate felony offense of abandoning a child or to establish
that she committed or attempted to commit an act clearly dangerous to human
life that caused David’s death.  In her
sixth issue, appellant focuses her sufficiency challenge on the element of
intent, which is necessary to prove the offense of abandoning a child.  

To prove the offense of
felony murder, the State must prove the elements of the underlying felony,
including the culpable mental state for that felony, but no culpable mental
state is required for the murder committed.  Lomax v.
State, 233 S.W.3d 302, 306–07 (Tex. Crim. App. 2007).  Accordingly, in this case, the State was
required to show that appellant intentionally abandoned David but was not
required to show that appellant intentionally or knowingly caused his death.  See id.;
see also Driver v. State, No. 01–08–00522–CR,
2011 WL 2303871, at *6 (Tex. App.—Houston [1st Dist.] June 9, 2011, no pet h.).  Appellant contends that the evidence was
insufficient to show that she intentionally abandoned her baby. “Intent can be
inferred from the acts, words, and conduct of the accused.” Patrick v. State, 906 S.W.2d 481, 487
(Tex. Crim. App. 1995).  “A person acts
intentionally, or with intent, with respect to the nature of [her] conduct or
to a result of [her] conduct when it is [her] conscious objective or desire to
engage in the conduct or cause the result.”  Tex.
Penal Code Ann. § 6.03(a) (Vernon 2011).

At trial, the evidence
showed that, on the night in question, appellant told her neighbor that she was
in a lot of pain and asked him to take her to the hospital.  However, she never told him that she was
pregnant.  

Once at the hospital,
appellant did not tell hospital personnel that she was pregnant.  When the front desk clerk made a statement to
appellant indicating that she thought that appellant was pregnant, appellant
yelled, “No, I’m not.”  

The evidence showed that appellant
went into the hospital restroom where she stayed for 15 to 20 minutes.  When her neighbor checked on her in the
restroom, appellant told him to wait. 
Appellant gave birth to David in the bathroom.  She used a scissors from her purse to cut the
umbilical cord.  After giving birth, appellant
removed trash from the restroom trash can, placed the infant inside it, and put
the trash on top of the baby.  

The evidence showed that David
remained in the waste can covered with trash while the restrooms were being
cleaned.  Although she remained at the
hospital after giving birth, appellant did not notify anyone of David’s presence.  As a result, the infant did not receive
medical care until he was retrieved from the trash can.  

The evidence showed that
when the baby was found in the trash bag, he was toward the bottom of the bag
and covered with paper towels.  The
emergency room charge nurse who helped remove the baby from the trash bag
testified that paper towels were wrapped around the infant in a manner indicating
that someone had made an effort to hide the baby.  

When hospital employee Carlos
Rozan began questioning her, appellant was not immediately forthcoming about
whether she had given birth.  On further
questioning appellant admitted that she had given birth at the hospital.  Rozan testified that, when asked why she had
not told someone about the baby, appellant told him that she already had two children,
she did not want another child, and had no intention of keeping the baby.  The evidence also showed that appellant’s
husband had recently left her.  

Officer Murillo, who spoke
with appellant at the hospital, testified that appellant admitted to giving birth
in the restroom and to cutting the umbilical cord with scissors she had in her
purse.  Appellant told the officer that
she had taken the trash bag out of the trash can, removed all of the trash, placed
the baby in the bag, covered the baby with trash, tied up the bag, and put the
bag back in the trash can.  

          The
assistant medical examiner testified regarding the cause of David’s death.  The doctor testified that “because the baby
had been unattended, the cord had been cut, and the baby had been left out with
no care provided, as well as medical assessment, that the baby went into shock.
 And because of the shock, the brain lost
oxygen and several of his organs failed and he contracted an infection which
ultimately took his life.”  The medical
examiner did not find any other possible cause of death.

          Appellant
specifically argues that the evidence does not show that she intentionally
abandoned David.  Rather, she asserts
that the evidence shows that she went to the hospital to give birth and to seek
medical assistance.  Appellant contends
that it was the hospital’s negligence that caused her to leave her baby in the
trash can, which resulted in his death.  

Appellant cites evidence
showing that the clerk, Sandra Richards, working at the front desk of the
hospital that night knew that appellant was in labor.  The clerk gave a video-taped statement to
police, which was admitted into evidence at trial.  In the tape, the clerk stated that, when
appellant arrived at the hospital, she knew that appellant was pregnant because
she saw “something coming out” from between appellant’s legs.  The clerk stated that she could see that
appellant was in labor and was delivering a baby.  Nonetheless, the clerk sent appellant to the
waiting room.  Thereafter, appellant left
the waiting room, went to the restroom, gave birth, and left the baby in the trash
can.  Appellant contends that she was not
thinking rationally because she had lost a lot of blood and was in a great deal
of pain.  She asserts that, had the
hospital staff sent her immediately to the labor and delivery floor of the
hospital, she would not have delivered her baby in the restroom and put him in
the trash can.

While evidence of the
clerk’s actions aided in appellant’s defense, ample evidence, as discussed supra, exists in the record to support
the State’s theory that appellant intentionally abandoned her baby in the trash
can.  The evidence shows that, through
her words and her actions, appellant took affirmative steps to conceal her
pregnancy and to conceal David once she placed him in the trash can.  Although the evidence showed that appellant
lost blood and reported being in pain that night, appellant cites no evidence
in the record to establish that, at the time of the offense, her blood loss or
pain caused her mental state to be so altered that she was incapable of forming
the requisite intent.  To the contrary,
the charge nurse testified that, not long after appellant had given birth,
appellant’s vital signs were stable indicating that she had not lost a
significant amount of blood.  

It was the jury’s responsibility
to weigh the evidence pertinent to the element of intent and to draw reasonable
inferences from that evidence.  Jackson, 443 U.S. at 319, 99 S. Ct. at
2789.  We cannot conclude that the jury’s
implied finding that appellant had the intent to abandon her baby is irrational.  Rather, it is a reasonable inference that
could have been drawn from the evidence. 

          Viewing
all the evidence, direct and circumstantial, in the light most favorable to the
jury verdict, we conclude that a rational fact finder could have found, beyond
a reasonable doubt, all of the essential elements of the charged offense of
felony murder.  See Jackson, 443 U.S. at 319, 99 S. Ct. at 2789.  More precisely, the jury could have found, beyond
a reasonable doubt, all of the elements of the offense of abandoning a child,
including intent, and also found beyond a reasonable doubt that, while in the
course of and in furtherance of the commission of the felony offense of
abandoning a child, appellant committed an act clearly dangerous to human life
that caused the David’s death. [4]  See Tex. Penal Code Ann. §§ 19.02(a)(3), 22.041(b).  We hold that the evidence is
sufficient to support the judgment of conviction.

          We
overrule appellant’s fifth and sixth issues. 


 

 

 

Conclusion

          We
affirm the judgment of the trial court. 

 

 

                                                                   Laura
Carter Higley

                                                                   Justice


 

Panel consists of Justices
Keyes, Higley, and Massengale.

Do not publish.   Tex. R. App. P. 47.2(b).

 











[1]           See
Tex. Penal Code Ann. § 19.02(a)(3) (Vernon 2011).





[2]
       In support of this argument, appellant relies on Garrett v. State, 573 S.W.2d 543 (Tex. Crim.
App. 1978).  The Court of Criminal
Appeals later disavowed Garrett in Johnson v. State to the extent that Garrett stood for the proposition that,
to prove felony murder, the State must show other felonious criminal conduct besides the underlying felony that caused the
death.  4 S.W.3d 254, 258 (Tex. Crim.
App. 1999).  After Johnson, Garrett stands
only for the proposition that a conviction for felony murder under Penal Code
section 19.02(b)(3) cannot be based on the underlying felony of manslaughter or
a lesser included offense of manslaughter. 
Id.; see Tex. Pen. Code Ann. §
19.02(a)(3) (providing that a person commits the offense of felony murder if he
“commits or attempts to commit a felony, other than manslaughter, and in the
course of and in furtherance of the commission or attempt, or in immediate
flight from the commission or attempt, he commits or attempts to commit an act
clearly dangerous to human life that causes the death of an individual”).  Appellant makes no assertion that the
underlying felony in this case, child abandonment, is a lesser included offense
of manslaughter.  





[3]           Appellant asserts that this Court has
exclusive jurisdiction pursuant to Article 5, section 6(a) of the Texas
Constitution to review fact questions.  See Tex.
Const. art. V, § 6(a).  Appellant
urges this court to “uphold its own constitutional powers and review factual
sufficiency under the Clewis standards
. . . .”  As pointed out by the State, we
addressed this issue in Ervin v. State,
331 S.W.3d 49, 53–54
(Tex. App.—Houston [1st Dist.] pet. ref’d). 
In Ervin, we held that as an
intermediate court of appeals, we are bound to follow the precedent of the
Court of Criminal Appeals.  See id. 
As a result, we are bound under the Court of Criminal Appeals’s decision
in Brooks v. State, 323 S.W.3d 893 (Tex. Crim. App. 2010) to
apply the standard of review enunciated in Jackson
v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979), regardless of
whether an appellant frames her issue as a legal or a factual sufficiency
challenge.  See id.  Thus, that is the
standard that we apply to appellant’s challenges here. 





[4]           Moreover, the evidence also supports
the implied finding by the jury that appellant did not deliver David to a designated emergency
infant care provider.  See Tex.
Penal Code Ann. § 22.041(h) (Vernon 2011) (providing that statute
defining offense of abandoning a child does not apply when the child is
delivered to a designated emergency infant care provider).