

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1189-13

**Nilda Iliana Rodriguez, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRD COURT OF APPEALS
### BELL COUNTY

MEYERS, J., delivered the opinion of the Court, in which KELLER, P.J., and PRICE, WOMACK, KEASLER, HERVEY, and COCHRAN, JJ., joined. ALCALA, J., filed a dissenting opinion, in which JOHNSON, J., joined.

### O P I N I O N

Appellant, Nilda Rodriguez, was charged with felony murder for the death of her two-month-old son. She was convicted and sentenced to 30 years in prison. Appellant appealed, initially challenging the validity of the indictment. The court of appeals, however, determined that she had not preserved this issue for appellate review. *Rodriguez v. State*, 408 S.W.3d 628, 631 (Tex. App.–Austin 2013). Instead, the court of appeals

requested supplemental briefing on whether it should analyze the sufficiency of the evidence to prove that Appellant committed "an act clearly dangerous to human life in the course of committing the felony of injury to a child." *Id*. Concluding that the jury could have reasonably inferred that Appellant committed acts that were clearly dangerous to human life in the process of starving her son, the court of appeals held the evidence to be legally sufficient to support the conviction. *Id*. at 633-34. We granted Appellant's petition for discretionary review to determine whether the court of appeals erred in holding that the evidence was sufficient to prove that Appellant committed an act clearly dangerous to human life.

**FACTS**

On October 8, 2008, Appellant gave birth to twins, one male and one female. Seven weeks later, EMS was called to Appellant's home when she found the male twin unconscious and unresponsive. He was taken to the hospital where he was pronounced dead. An autopsy indicated that the infant died from malnutrition and dehydration. He had gained only ten ounces since birth and was described by a medical expert as having wrinkled, tenting skin, no subcutaneous fat, and no fluid in his body that could be drawn for testing. The expert also explained that this condition was not normal and would be one that progressed over time, possibly after the child's being provided with small, but not adequate, amounts of food. Appellant was the only adult responsible for the baby's care, and the child had not seen a doctor since the time he was born. The other children in

Appellant's care, including the victim's twin sister, seemed to have been fed and had no health issues related to nutrition.

At trial, an expert for the State testified that the victim's condition would have been "apparent to anybody who was taking care of him." This was supported by the child's great-grandmother, who testified that when she saw him five days prior to his death, she thought that he looked like a kitten whose mother would not nurse it. She even told Appellant that the child looked sick and that he would not last another two weeks until his scheduled check-up with a doctor. Appellant testified, however, that she fed the child the same as his siblings and that she did not find his lack of weight gain alarming because he had been born small. Although Appellant asserted that the child did have trouble taking bottles, she also confirmed that there was no medical reason, such as chronic vomiting or diarrhea, that would explain the victim's dehydration and malnutrition.

Appellant was charged with murder during the course of and in furtherance of the commission of the felony offense of injury to a child. The indictment alleged that her acts of withholding sufficient nutrition and fluid in order for the infant to sustain life and of starving him were clearly dangerous to human life and caused the child's death. The jury found Appellant guilty of the felony murder charge and sentenced her to 30 years imprisonment.

## COURT OF APPEALS

Appellant appealed, initially challenging the indictment as invalid for not supporting the conviction because it alleged only injury to a child by omissions, not affirmative acts, as required by Section 19.02(b)(3). *See id*. at 631; *See also* TEX. PENAL CODE §§ 19.02(b)(3), 22.04(1). The court of appeals determined that she did not preserve this issue for appellate review. *Rodriguez*, 408 S.W.3d at 631. However, the court did request, on its own motion, that the parties file supplemental briefing on whether the evidence was sufficient to prove that Appellant committed an act clearly dangerous to human life in the course of the felony of injury to a child. *Id*. 631-32.

After the additional briefing was submitted, the court of appeals then addressed Appellant's legal sufficiency challenge raised in her supplemental brief where she again asserted "that the conduct alleged in the indictment and proven at trial–'starvation and neglect'–were 'omissions.'" *Id*. at 633. The felony offense of injury to a child by omission, she argued, could not support her conviction because felony murder requires an affirmative act. *Id*.

The court of appeals asserted that, while injury to a child can serve as the underlying felony for felony murder, the State did have to prove an act clearly dangerous to human life. *Id*. The court decided that the jury could have inferred from the evidence that Appellant committed acts in starving the child, such as feeding him far less than he needed, that were clearly dangerous to human life. *Id*. Viewing the evidence in the light most favorable to the verdict, the court of appeals concluded that the evidence was legally

sufficient to support the conviction. *Id*. at 634.

Chief Justice Jones dissented, asserting that all of the Appellant's conduct alleged in the indictment were omissions, or "instances of *failing* to act or take some action." *Id*. at 636 (emphasis in original). Because the State did not prove that Appellant committed any "act" at all, let alone an act that caused the victim's death, Chief Justice Jones concluded that the evidence was insufficient to support Appellant's conviction. *Id*. at 639.

## ARGUMENTS OF THE PARTIES

Appellant asserts that in order for injury to a child to be the underlying crime for felony murder, the injury must have been inflicted by an affirmative act. She contends that her prosecution is based entirely on omissions and, therefore, cannot support her conviction. She disagrees with the court of appeals, stating that it is just as reasonable for a jury to infer that continuously feeding an infant less than needed is an omission. Further, she argues that multiple omissions over time cannot be linked together to become an act.

As an example of where a defendant's conduct fit the definition of an "act," Appellant points to *Johnson v. State*, 4 S.W.3d 254 (Tex. Crim. App. 1999), in which it was determined that injury to a child can be the underlying offense for felony murder and that hitting a child with a blunt object is an act clearly dangerous to human life. Appellant states that *Villanueva v. State*, 227 S.W.3d 744 (Tex. Crim. App. 2007), further illustrates her point because it was decided that convicting a defendant of two counts of injury to a child, one by an act of striking the infant and one by an omission of not seeking medical

attention for the infant after he was injured, violated double jeopardy. Finally, Appellant looks to *Hill v. State*, 881 S.W.2d 897 (Tex. App. – Ft. Worth 1994, pet. granted), in which a child died from starvation and the defendant was charged with injury to a child by omission, in order to demonstrate that the process of starvation is an omission, not an act.

The State asserts that the question in this case is whether the reasonable inferences that the jury presumptively made were sufficient to prove the elements of the offense. Here, the State argues, it was reasonable for the jury to infer that the victim was consistently fed less than necessary to sustain life and that this constituted an affirmative act clearly dangerous to life. The State contends that Appellant had to have acted habitually in under-feeding her infant and criticizes the dissent as not only not viewing the evidence in a light favorable to the verdict but also refusing to draw even reasonable inferences, as the jury was allowed to do.

The State argues that, while starving the child and not getting him medical attention sooner are omissions, they are also acts. To illustrate this, the State points to *Driver v. State*, 358 S.W.3d 270 (Tex. App.–Houston [1st Dist.] 2011, pet. ref'd), in which it was held that a defendant's possession of cocaine, together with placing his son in a circumstance where he could ingest that cocaine, was conduct sufficient to prove acts dangerous to life. Similar to *Driver*, the jury here could have found that Appellant placed her child in the circumstance that caused starvation and provided him with inadequate

care, constituting affirmative acts.

The State goes on to assert that the cases Appellant cites do not support her position. For example, the State says, *Hill* actually states that the actions the defendant took in chaining his child in order to deprive him of food supported the deadly weapon finding, not that starving does not imply action. Further, *Villanueva* deals only with double jeopardy and does not address the issue in this case.

## ANALYSIS

Felony murder is, essentially, "an unintentional murder committed in the course of committing a felony." *Fuentes v. State*, 991 S.W.2d 267, 272 (Tex. Crim. App. 1999). More specifically, the Penal Code provides that felony murder is committed where a person "commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt . . . he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual." TEX. PENAL CODE § 19.02(b)(3). It is established that an injury to a child offense may serve as the underlying crime in a felony murder prosecution. *Johnson v. State*, 4 S.W.3d 254, 258 (Tex. Crim. App. 1999); *Contreras v. State*, 312 S.W.3d 566, 584 (Tex. Crim. App. 2010). However, while an injury to a child offense can be based on an act or omission, the felony murder statute makes clear that an "act clearly dangerous to human life" must be the cause of the death of the victim. TEX. PENAL CODE §§ 19.02(b)(3), 22.04(a).

An "act" is a voluntary or involuntary bodily movement, while an "omission" is a "failure to act." *Id*. at § 1.07(a)(1), (a)(34). The evidence presented at trial showed that Appellant's infant died of malnutrition and dehydration, that Appellant was the child's sole caregiver, that the child's condition would have been apparent to anyone caring for him, and that Appellant should have sought medical care for him. The indictment specifically alleged that Appellant (1) starved the infant, and (2) withheld from him sufficient nutrition and fluids to maintain life. All of this conduct involves the Appellant *not* performing some act that was required of her, which forces each allegation squarely within the definition of an omission. *Id*. at § 1.07(a)(34).

We disagree with the court of appeals' conclusion that the jury could have reasonably inferred that Appellant committed acts, rather than omissions, in starving her son where there was no evidence of any such acts. While the jury is allowed to draw reasonable inferences, it cannot simply speculate or theorize about the possible meaning of the evidence. *Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007). Here, there was no evidence presented that Appellant committed any affirmative acts in causing the death of her son. While the State argues that Appellant acted in giving her son some food, but not enough for him to survive, the criminal conduct lies in her failure to provide a sufficient amount of food. As Chief Justice Jones pointed out, the act of giving the child some amount of food, however small, would actually serve to prolong his life, rather than be the "clearly dangerous act" that caused the child's death. *Rodriguez*, 408 S.W.3d at

639 (Jones, C.J., dissenting).

In addition, supporting the court of appeals' conclusion would gut the statutory distinction between "acts" and "omissions." It would allow for acts to be "reasonably inferred" where practically any omission has occurred. For example, if a child were to injure himself and the parent never sought medical care, under the court of appeals' logic, it would be reasonable for the jury to infer that the parent acted when he or she sat down on the couch instead of taking the child to the hospital. Or if a parent did not provide a child with adequate clothing for cold weather, the jury could infer that the parent affirmatively acted by providing some clothing, but not a coat. Both of these are examples of omissions–failures to act–but the court of appeals' conclusion renders any distinction between the two words meaningless, and would turn each case like this into a simple semantic argument where both sides are correct.

## CONCLUSION

There was no evidence presented in this case that Appellant committed any affirmative "act" in the starvation of her child. The evidence showed only her omissions caused the infant's death, rather than any act clearly dangerous to human life, as required by the statute. Therefore, the evidence was insufficient to support Appellant's felony murder conviction and it must be overturned. However, because the jury necessarily found Appellant guilty of the underlying felony of injury to a child and the evidence is sufficient to support this finding of guilt, the judgment must be reformed to reflect this.

*Bowen v. State*, 374 S.W.3d 427, 432 (Tex. Crim. App. 2012). The judgment of the court of appeals is reversed and the case is remanded to the trial court to reform the judgment to reflect a conviction for injury a child and for a new punishment hearing on this conviction.

Delivered: June 18, 2014

Publish