

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-18-00488-CR

———————————————————

DANITA CAROL THETFORD, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 432nd District Court
Tarrant County, Texas
Trial Court No. 1558380R

Before Sudderth, C.J.; Womack and Wallach, JJ.
Opinion on Remand by Chief Justice Sudderth

**OPINION ON REMAND**

This case comes to us on remand from the Court of Criminal Appeals "to address the sufficiency of the evidence to prove attempted murder under *Rodriguez* [*v. State*, 454 S.W.3d 503 (Tex. Crim. App. 2014) [hereinafter *Rodriguez II*]*, modified on other grounds on reh'g*, 454 S.W.3d 509 (2015)]." *Thetford v. State*, No. PD-0258-21, 2021 WL 2674484, at *1 (Tex. Crim. App. June 30, 2021) [hereinafter *Thetford II*] (not designated for publication).[2]

*Rodriguez II* was a sufficiency case that turned on the statutory distinction between an "act" and an "omission"; the felony murder statute requires the former but the evidence at Rodriguez's felony murder trial showed only the latter. *Rodriguez II*, 454 S.W.3d at 507–08; *see* Tex. Penal Code Ann. § 19.02(b)(3) (defining felony murder as requiring "an act clearly dangerous to human life that causes the death"); *see*

---

[1]In Thetford's initial, direct appeal to this court, Thetford raised three issues, one of which was the trial court's denial of Thetford's motion to quash her attempted murder indictment. *Thetford v. State*, No. 02-18-00488-CR, 2021 WL 278913, at *6–11 (Tex. App.—Fort Worth Jan. 28, 2021) [hereinafter *Thetford I*] (mem. op., not designated for publication), *pet. granted, cause remanded*, 2021 WL 2674484. Thetford's failure-to-quash argument was based on the same act–omission distinction that she relies upon here, and she similarly argued that *Rodriguez II* required reversal of her conviction based on the language of her indictment. *See id.*; *cf. Rodriguez II*, 454 S.W.3d at 507–08. We noted that *Rodriguez II* was a sufficiency case, and that despite citing and relying upon *Rodriguez II*, Thetford had chosen not to raise a sufficiency issue. *Thetford I*, 2021 WL 278913, at *7 & nn.21–22. The Court of Criminal Appeals acknowledged that Thetford did not raise the sufficiency issue but nonetheless remanded the case for us to address it as unassigned error. *Thetford II*, 2021 WL 2674484, at *1.

[2]*See* Tex. R. App. P. 77.3.

*also Hudson v. State*, 449 S.W.3d 495, 498 n.7 (Tex. Crim. App. 2014) (summarizing holding in *Rodriguez II*).

The criminal attempt statute at the center of this case similarly requires an "act," Tex. Penal Code Ann. § 15.01(a), but Appellant Danita Carol Thetford stands convicted of attempting to murder her son, C.T., "by failing to provide adequate food and/or nutrition." [Capitalization altered.] Both Thetford and the State acknowledge the act–omission distinction, and both acknowledge that attempted murder requires evidence of "an act"—not an omission—that "amount[s] to more than mere preparation [and] that tends but fails to effect the commission of the [murder] intended." *Id.* But the parties disagree about whether Thetford's indictment alleged an act or an omission, and they disagree regarding the interpretation and importance of *Rodriguez II*.[3]

Thetford argues that, because her indictment alleges that she "fail[ed]" to do something, the indictment necessarily states an offense of omission, and she claims that *Rodriguez II* established a per se rule that the evidence is always insufficient to support a conviction when the relevant statute requires an "act," but the defendant's

---

[3]The State also argues that Thetford's brief simply reasserts the unpreserved indictment challenge that we rejected in Thetford's initial appeal. *See Thetford I*, 2021 WL 278913, at *6–11. While there are many similarities between Thetford's initial indictment challenge and her current argument on remand, we nonetheless liberally construe Thetford's brief—contextualized by the Court of Criminal Appeals' directive in *Thetford II*—to adequately raise the sufficiency issue. *See* Tex. R. App. P. 38.9; *Thetford II*, 2021 WL 2674484, at *1.

indictment alleges an omission. Thetford urges us to apply this per se rule by holding that an indictment alleging the "fail[ure] to provide" cannot support a conviction for attempted murder—regardless of the evidence offered at trial. According to Thetford, then, we need not look further than the face of her failure-alleging indictment to resolve this case.

The State rejects Thetford's characterization of her indictment as omission-based; it argues that a failure to do something can involve component acts, and it claims that because Thetford's indictment alleges that her failure was an "*act* [that] did amount to more than mere preparation," her charge was expressly premised on the component acts of her "fail[ure] to provide."[4] [Emphasis added.] The State also rejects the idea that *Rodriguez II* established a per se rule based on the language of the indictment. Instead, it claims that *Rodriguez II* conducted the traditional *Jackson v. Virginia* sufficiency analysis[5] by examining the record for evidence of affirmative acts. It argues that conducting that same analysis in this case requires affirmation of the jury's verdict because there was evidence that Thetford's "fail[ure] to provide adequate food and/or nutrition" involved affirmative acts.

---

[4]At trial, Thetford acknowledged that her "fail[ure] to provide" was expressly alleged as an "act." Thetford even objected to the jury charge on this basis, claiming that the attempted murder count "talk[ed] about failing to provide as an act . . . . [and] that is inherently contradictory." The trial court overruled the objection and "ma[de] the determination that an omission is an act" for purposes of attempted murder.

[5]The traditional sufficiency analysis is that set out in *Jackson v. Virginia*, and recited *infra*, Section I.B.2.a. *See* 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).

4

We agree with the State and will affirm the trial court's judgment.

## I. Discussion[6]

The Penal Code distinguishes between acts and omissions; an "[a]ct" is a "bodily movement," while an "[o]mission" is the "failure to act." *See* Tex. Penal Code Ann. § 1.07(a)(1) (noting that "[a]ct . . . includes speech"), (a)(34). The failure to act is generally not an offense "unless a law . . . provides that the omission is an offense or otherwise provides that [the individual] has a duty to perform the act." *Id.* § 6.01(c). But the distinction between acts and omissions is not always black and white; although an omission is, by definition, the opposite of an act, an allegation that a defendant failed to do something "does not mean that [the] defendant . . . may not also engage in some type of act during the course of that omission." *McGuire v. State*, 493 S.W.3d 177, 188–90 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (quoting *Rodriguez v. State*, 408 S.W.3d 628, 637 (Tex. App.—Austin 2013) [hereinafter *Rodriguez I*] (Jones, C.J., dissenting), *rev'd*, 454 S.W.3d 503); *see also Hill v. State*, 881 S.W.2d 897, 902–03 (Tex. App.—Fort Worth 1994) (recognizing that there was evidence of both affirmative acts and omissions), *aff'd*, 913 S.W.2d 581 (Tex. Crim. App. 1996).

Nonetheless, we cannot "gut the statutory distinction between 'acts' and 'omissions'" by simply inferring that the jury relied upon component acts where only an omission is alleged and proven to have occurred. *Rodriguez II*, 454 S.W.3d at 508.

---

[6]*Thetford I* includes a detailed recitation of the facts giving rise to her conviction. *Thetford I*, 2021 WL 278913, at *1–5.

Doing so would "rende[r] any distinction between the two words meaningless, and would turn each case like this into a simple semantic argument where both sides are correct." *Id.*

*Rodriguez II* grappled with the act–omission distinction and with its application. And, according to Thetford, *Rodriguez II* did more than that as well. Thetford claims that *Rodriguez II* obviated the need for the traditional *Jackson* sufficiency analysis in cases that turn on the act–omission distinction, as this case does. The State not only disagrees with Thetford, but it cites *Rodriguez II* as support for its contrary position.

Because both parties point to *Rodriguez II* for their diametrically opposed positions, because our interpretation of *Rodriguez II* establishes the nature of our review, and because the Texas Court of Criminal Appeals has directed us to review the sufficiency of the evidence "under *Rodriguez* [*II*]," *Thetford II*, 2021 WL 2674484, at *1, we must first determine the importance of that case—whether *Rodriguez II* sidestepped the traditional *Jackson* sufficiency analysis and rooted its holding in the language of the indictment or whether it conducted the *Jackson* analysis and rooted its holding in the specific evidence offered at trial.

## A. Interpreting *Rodriguez II*

In *Rodriguez II*, Rodriguez was indicted for and convicted of killing her infant son in the course of committing felony injury to a child. *Rodriguez II*, 454 S.W.3d at 505; *Rodriguez I*, 408 S.W.3d at 630. The evidence of Rodriguez's guilt was

circumstantial:[7]  Rodriguez was the only adult responsible for the infant's care, the infant died from malnutrition, dehydration, and medical neglect; the death came less than two months after the infant was born; and "there was no medical reason for [the infant's] condition . . . except the withholding of sufficient nutrition and fluids." *Rodriguez I*, 408 S.W.3d at 629–30; *see Rodriguez II*, 454 S.W.3d at 505.  Rodriguez's indictment alleged, "as both the manner and means of causing injury to [the infant] as well as the act[s] clearly dangerous to human life," that Rodriguez had "starv[ed] him," "with[eld] . . . sufficient nutrition and fluids to maintain [his] life," "fail[ed] to insure that [he] ingested and benefitted from sufficient nutrition and fluids," and "fail[ed] to seek medical care."[8]  *Rodriguez I*, 408 S.W.3d at 630; *id.* at 635 (Jones, C.J., dissenting); *see Rodriguez II*, 454 S.W.3d at 505.

## 1. *Rodriguez I*

When the case came before the Third Court of Appeals, Rodriguez argued that her indictment alleged omissions and that the offense of injury to a child by omission

---

[7]"Circumstantial evidence is [just] as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient." *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016).

[8]Rodriguez's two "fail[ures]" were alleged to have occurred while she had a legal and statutory duty to the child, had assumed care, custody, and control over him, and had a duty to provide protection, food, and medical care. *Rodriguez I*, 408 S.W.3d at 630.  The State argued at trial that the two "fail[ures]" alleged injury to a child by omission while the "starvation" and "withholding" alleged injury to a child by commission.  *Id.* at 636 (Jones, C.J., dissenting).  The State characterized all such conduct as "acts" for purposes of felony murder, though.  *Id.*

could not support a felony murder conviction because the felony murder statute requires an affirmative "act." *Rodriguez II*, 454 S.W.3d at 506; *Rodriguez I*, 408 S.W.3d at 632–33; *see* Tex. Penal Code Ann. § 19.02(b)(3). Thus, much like Thetford's argument in this case, Rodriguez's argument initially focused on the language of her indictment and challenged the indictment's reliance on an allegation and crime of omission. *See also Rodriguez I*, 408 S.W.3d at 630–33 (noting similarity between Rodriguez's indictment challenge and legal sufficiency argument).

The Third Court of Appeals did not find the language of the indictment dispositive. *Id.* at 633. Instead, the court conducted the traditional *Jackson* sufficiency analysis by examining the record for evidence of affirmative, dangerous acts that caused the infant's death. *See id.* at 632–34. The majority held that because Rodriguez was responsible for her son's care and because the baby died from malnutrition, the jury "could have reasonably inferred . . . that Rodriguez committed acts—such as continuously feeding her son far less than he needed—in starving her son." *Id.* at 633–34; *see also id.* at 630 (noting expert testimony that the infant's condition was the result of inadequate nutrition over a period of days).

The dissenting opinion disagreed. First, the dissent cast doubt on Rodriguez's indictment by characterizing its descriptive allegations as non-acts.[9] *Id.* at 636 (Jones,

---

[9]The dissent acknowledged, though, that "a defendant charged with an omission may . . . also engage in some type of act during the course of that omission." *Rodriguez I*, 408 S.W.3d at 637 n.4, 637–38 (Jones, C.J., dissenting).

8

C.J., dissenting); *see Rodriguez II*, 454 S.W.3d at 506 (summarizing dissent). However, while the dissent implied that such an indictment failed to adequately allege felony murder, it did not actually state as much. Instead, like the majority, the dissent dedicated the bulk of its opinion to the traditional *Jackson* sufficiency analysis. *Rodriguez I*, 408 S.W.3d at 637–40 (Jones, C.J., dissenting).

Applying this analysis, the dissent concluded that "[t]here [wa]s simply no evidence in the record . . . that in the course of starving or medically neglecting her son, [Rodriguez] engaged in any type of affirmative bodily movement that caused [her son's] death." *Id.* at 639. Even the conduct cited by the majority—"continuously feeding [the infant] far less than he needed"—merely prolonged the infant's life; it was not "clearly dangerous to human life" and did not "cause the death." *Id.* at 638–39.

The majority and dissenting opinions thus both applied the traditional *Jackson* analysis, but they reached different results. The case was teed up for the Court of Criminal Appeals as a sufficiency dispute—not as a per se rejection of a failure-alleging indictment.

### 2. *Rodriguez II*

The Court of Criminal Appeals' opinion reflects as much. The court did not jettison Rodriguez's appeal based on the language of her indictment. In fact, the court did not even quote the allegations in Rodriguez's indictment. *Rodriguez II*, 454 S.W.3d at 507. Rather, it confirmed that "an injury to a child [by omission] offense may serve as the underlying crime in a felony murder prosecution" as long as the

9

evidence offered at trial shows that "an 'act clearly dangerous to human life' [was] the cause of the death of the victim." *Id.* The court then examined the record for evidence of an affirmative, dangerous act that caused the death of Rodriguez's son. *Id.* at 507–08.

But there was no such evidence. Agreeing with the *Jackson* analysis in the Third Court of Appeals' dissent, the Court of Criminal Appeals repeated that feeding the infant "small, but not adequate, amounts of food" could not support Rodriguez's felony murder conviction. *Id.* at 505, 508; *Rodriguez I*, 408 S.W.3d at 633. Notably, "continuously feeding [the infant] far less than he needed" was not specifically alleged in Rodriguez's indictment, but the court did not reject it on this basis; it rejected the act because it did not meet the statutory criteria of (1) being clearly dangerous to human life and (2) causing the infant's death. *Rodriguez II*, 454 S.W.3d at 506, 508.

And no other evidence met those criteria either. "The evidence presented at trial showed that Appellant's infant died of malnutrition and dehydration, that Appellant was the child's sole caregiver, that the child's condition would have been apparent to anyone caring for him, and that Appellant should have sought medical care for him"—"[a]ll . . . [of which] involve[d] the Appellant *not* performing some act that was required of her." *Id.* at 507. Absent evidence that Rodriguez committed an affirmative, clearly dangerous act that caused the death of her son, the jury could not merely speculate that unspecified and unproven dangerous acts were committed in the course of the infant's starvation. *Id.* at 507–08.

Although the Court of Criminal Appeals did not cite *Jackson* or recite the familiar *Jackson* sufficiency standard, the court's holding expressly turned on the "evidence presented at trial." *Id.* at 507–08 (referencing and agreeing with lower court's dissent); *Rodriguez I*, 408 S.W.3d at 637 n.2, 638 (Jones, C.J., dissenting) (clarifying reliance on the hypothetically correct jury charge). The high court did not quote, much less dissect, the language of Rodriguez's indictment; it did not condemn the Third Court of Appeals' reliance on a component act not expressly alleged in the indictment; and it did not take issue with the *Jackson* standard of review that the Third Court of Appeals had applied. The Court of Criminal Appeals took issue with the Third Court of Appeals' reliance on an act that was not "dangerous to human life" and with that court's conclusion that "the jury could have reasonably inferred" other unspecified, unproven dangerous acts. *Rodriguez II*, 454 S.W.3d at 508; *see Rodriguez I*, 408 S.W.3d at 633.

Another aspect of the court's opinion clarifies its evidentiary basis as well. Judge Alcala, dissenting from the Court of Criminal Appeals' opinion, summarized the majority as holding "that the fact finder was irrational in deciding that the circumstances of this case fit within [the] definition" of an act. *Rodriguez II*, 454 S.W.3d at 508 (Alcala, J., dissenting). In other words, Judge Alcala recognized that the

11

majority decision turned on an analysis of the evidence rather than a rejection of the indictment.[10]

*Rodriguez II* thus did not establish a per se rule prohibiting the State from using a failure-alleging indictment to charge or convict a defendant of an act-based offense.[11] We are unaware of any case law that has interpreted and applied *Rodriguez II* in this per se manner, and Thetford has not cited any. *See Cantu v. State*, No. 04-20-00096-CR, 2021 WL 3639812, at \*2–4 (Tex. App.—San Antonio Aug. 18, 2021, no pet.) (mem. op., not designated for publication) (distinguishing *Rodriguez II* and analyzing sufficiency of felony murder conviction under *Jackson* where the affirmative, dangerous acts alleged in the indictment included "failure to keep a proper lookout," and "failure to yield the right of way"); *Roberson v. State*, No. 13-19-00534-CR, 2020 WL 5056121, at \*5–6 (Tex. App.—Corpus Christi–Edinburg Aug. 27, 2020, no pet.) (mem. op., not designated for publication) (rejecting interpretation of *Rodriguez II* similar to Thetford's, distinguishing *Rodriguez II*, and analyzing sufficiency of murder

---

[10]A footnote in Judge Alcala's dissenting opinion indicates that she rejected one of the State's indictment allegations—the allegation that Rodriguez withheld sufficient nutrition and fluids—because it necessarily "asserted an omission rather than an act." *Rodriguez II*, 454 S.W.3d at 509 n.1 (Alcala, J., dissenting). The majority opinion, in contrast, contains no such footnote.

[11]Had *Rodriguez II* established a per se rule, the Court of Criminal Appeals could have summarily reversed and vacated Thetford's attempted murder conviction based on the undisputed language of the indictment. Instead, the Court of Criminal Appeals remanded the case to this court and specifically instructed us to address the sufficiency of the evidence. *Thetford II*, 2021 WL 2674484, at \*1.

conviction under *Jackson* where defendant committed affirmative, dangerous acts in "failing to feed or provide nourishment").[12]

Rather, the *Rodriguez II* court (1) recognized that, even if the indictment describes a failure to do something, the felony murder statute requires evidence of an act that meets certain statutorily specified criteria and (2) reviewed the record for evidence of an act meeting these criteria but found "[t]here was no evidence presented in this case that [the defendant] committed any affirmative 'act' in the starvation of her child." *See Rodriguez II*, 454 S.W.3d at 507–08.

---

[12] *See also McGuire*, 493 S.W.3d at 188–90 (quoting *Rodriguez I*, 408 S.W.3d at 637 (Jones, C.J., dissenting), holding felony murder indictment not fundamentally defective in fatality DWI case, and recognizing that omissions—such as the failure to maintain an adequate lookout and the failure to take evasive actions—can include acts clearly dangerous to human life); *cf. Hudson*, 449 S.W.3d at 498 n.7 (summarizing *Rodriguez II* as "holding that the cause of death that gives rise to a felony murder conviction cannot be based solely on an omission"); *Fraser v. State*, 593 S.W.3d 883, 890 n.6 (Tex. App.—Amarillo 2019, pet. ref'd) (quoting *Rodriguez II* for unrelated rule and summarizing *Rodriguez II* in explanatory parenthetical as "finding no 'act' in the starvation of a child"). *But see Day v. State*, No. 13-13-00338-CR, 2016 WL 4272383, at *5 (Tex. App.—Corpus Christi–Edinburg Aug. 11, 2016, pet. ref'd) (mem. op., not designated for publication) (summarizing *Rodriguez II* as "holding that a felony murder conviction predicated on a defendant's failure to act is legally insufficient because section 19.02(b)(3) expressly limits the proscribed conduct to 'acts'—not omissions, such as the defendant's failure to provide necessary food and nutrition to her child"); *Avellaneda v. State*, 496 S.W.3d 311, 318 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (citing *Rodriguez II*; stating that "[i]njury to a child may serve as the underlying crime in a felony murder prosecution, but only if the injury is based on an act, not an omission"; and holding that trial court did not err by denying jury charge on injury to a child by omission because it was not a lesser-included offense of felony murder based on injury to a child by commission).

13

**B. Applying *Rodriguez II***

Following *Rodriguez II*, then, requires us (1) to examine the criminal attempt statute before us and determine the statutorily specified criteria for the relevant "act" requirement and (2) to perform the traditional *Jackson* sufficiency analysis by examining the record for evidence of such an act. *Cf. Cantu*, 2021 WL 3639812, at *2–4 (distinguishing *Rodriguez II* and analyzing sufficiency of felony murder conviction under *Jackson*); *Roberson*, 2020 WL 5056121, at *6 (similar).

### 1. Attempted Murder "Act" Requirement

To prove attempted murder, the State is required to prove that a defendant, "with specific intent to commit [the offense of murder], . . . does an *act* amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." Tex. Penal Code Ann. § 15.01(a) (emphasis added); *see Chen v. State*, 42 S.W.3d 926, 929 (Tex. Crim. App. 2001) (summarizing statutory language in four elements); *Yalch v. State*, 743 S.W.2d 231, 233 (Tex. Crim. App. 1988) (similar); *Pope v. State*, No. 2-05-378-CR, 2007 WL 866232, at *5 (Tex. App.—Fort Worth Mar. 22, 2007, no pet.) (mem. op., not designated for publication) (summarizing in three elements). Plainly, this statute requires an "act"—a "bodily movement." Tex. Penal Code Ann. §§ 1.07(a)(1), 15.01(a). But not just any act; the statute requires an act that

14

(1) amounts to more than mere preparation and (2) tends but fails to effect the commission of the offense intended.[13]  *Id.* § 15.01(a).

## 2.  Sufficiency Analysis

With these statutory criteria in mind, we review the record under the traditional *Jackson* sufficiency analysis to determine whether the State satisfied the criminal attempt statute's "act" requirement.

### a.  The *Jackson* Sufficiency Standard

When reviewing the sufficiency of the evidence under *Jackson*, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Edward v. State*, 635 S.W.3d 649, 655 (Tex. Crim. App. 2021); *Herron v. State*, 625 S.W.3d 144, 152 (Tex. Crim. App. 2021).  The essential elements of the crime are defined by the hypothetically correct jury charge. *Herron*, 625 S.W.3d at 152; *see also Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018) ("The essential elements of an offense are determined by state law.").  The hypothetically correct jury charge is one that (1) accurately sets out the law; (2) is authorized by the indictment; (3) does not unnecessarily increase the State's burden of proof; (4) does not unnecessarily restrict the State's theories of liability; and

---

[13]The relevant act must also have been committed with the specific intent to commit murder.  Tex. Penal Code Ann. § 15.01(a).  But Thetford does not challenge the mens rea element of her offense.

(5) adequately describes the particular offense for which the defendant was tried. *Herron*, 625 S.W.3d at 152; *Hernandez v. State*, 556 S.W.3d 308, 312 (Tex. Crim. App. 2017), *aff'd on reh'g*, 556 S.W.3d 325 (2018). Because the hypothetically correct charge is limited to that "authorized by the indictment," the statutory elements contained in this hypothetical charge are modified by the material allegations in the charging instrument. *See Herron*, 625 S.W.3d at 152.

The material allegations in the indictment are those that would give rise to a material variance, meaning that if the State's evidence at trial differed factually from the relevant indictment allegations, the variance would prejudice the defendant's substantial rights. *Hernandez*, 556 S.W.3d at 312–13. There are two types of variances that are or can be material: (1) variances "from the statutory *theory* of the offense as alleged in the indictment," which are always material; and (2) variances involving a nonstatutory allegation that describes an element of the offense, which "can be either material or immaterial . . . depending upon whether it would result in conviction for a different offense than what the State alleged." *Id.* at 313–14 (emphasis altered) (citing *Johnson v. State*, 364 S.W.3d 292, 294–99 (Tex. Crim. App. 2012)); *see also Johnson*, 364 S.W.3d at 295–99 (describing a third category of variances involving immaterial, nonstatutory descriptions that do not relate to the allowable unit of prosecution).

Here, Thetford's indictment alleged that,

> with the specific intent to commit the offense of murder, [Thetford] . . . attempt[ed] to cause the death of [C.T.] by failing to provide adequate food and/or nutrition, and said act did amount to

16

more than mere preparation that tends but fails to effect the commission of the offense intended, at a time when the defendant had assumed care, custody[,] or control of [C.T.] or had a legal duty [to] act because the defendant was the mother of [C.T.][14]

The key indictment allegation at the center of this appeal—the allegation that Thetford committed the offense by "failing to provide adequate food and/or nutrition"—is a nonstatutory allegation describing an essential element of the offense: the "act amounting to more than mere preparation." Tex. Penal Code Ann. § 15.01(a); *Hernandez*, 556 S.W.3d at 313–14. The State was required to offer sufficient evidence of the element it alleged.[15] *Cf. Hernandez*, 556 S.W.3d at 312–14 (explaining that the evidence may differ from a nonstatutory description of an

[14]The conduct alleged as the "act" constituting attempted murder—"fail[ing] to provide adequate food and/or nutrition . . . at a time when the defendant had assumed care, custody[,] or control of [C.T.] or had a legal duty to act"—is the same conduct that was alleged as the basis for Thetford's separate charge of injury to a child by omission. The State argues that Thetford's "fail[ure]" was expressly alleged as an omission in the injury to a child count, and expressly alleged as an act in the attempted murder count.

[15]Neither Thetford nor the State has addressed the materiality of this nonstatutory, descriptive allegation; both implicitly assume that it is material. *See Yalch*, 743 S.W.2d at 232–33 (recognizing that an indictment's description of the "act" is material in criminal attempt case); *Hernandez v. State*, 903 S.W.2d 109, 113–14 (Tex. App.—Fort Worth 1995, pet. ref'd) (recognizing that the State was compelled to prove the "act" described in the indictment); *Jimenez v. State*, 727 S.W.2d 74, 77 (Tex. App.—San Antonio 1987, pet. ref'd) (recognizing that the indictment's description of the "act" is an "allegation of an element of the offense and must be proved"). Because the relevant allegation describes an essential element of the offense, and because Thetford does not contend that the State proved an offense different from that alleged, we need not analyze the issue at length. *Cf. also Rodriguez II*, 454 S.W.3d at 506–08 (analyzing sufficiency without expressly addressing materiality of the descriptive indictment allegations).

17

element as long as the departure is not "significant enough" for the court to conclude that the State failed to prove the same offense (quoting *Johnson*, 364 S.W.3d at 297)).

### b. The Sufficiency of the Evidence to Prove Attempted Murder

The State carried its burden. There is sufficient evidence for a rational jury to have found that Thetford's "fail[ure] to provide adequate food and/or nutrition" involved affirmative "act[s] amounting to more than mere preparation that tend[ed] but fail[ed] to effect the commission of" C.T.'s murder. Tex. Penal Code Ann. § 15.01(a). While there was certainly evidence that Thetford passively failed to feed C.T., there was also evidence that Thetford took identifiable, affirmative steps to deter others from feeding him and to prevent C.T. from accessing food for himself:[16]

- Thetford repeatedly told her friends and family members, as well as C.T.'s doctors, nurses, and (eventually) hospice staffers, that eating caused C.T. pain.

- Thetford's reports of C.T.'s alleged feeding problems led his doctors to place a gastrostomy button (g-button)[17] that enabled direct feedings into C.T.'s

---

[16]The bulleted actions were the subject of conflicting evidence. For example, Thetford offered evidence that C.T.'s doctors determined that he was terminal, that one of the hospice staffers made the decision to discontinue C.T.'s intravenous feedings, and that the hospice staff advised her to make funeral arrangements for C.T. But under *Jackson*, we must "presume that the fact finder resolved those conflicts in favor of the verdict and defer to that determination." *Edward*, 635 S.W.3d at 655–56 (reiterating that "[t]he jury is the sole judge of the weight and credibility of the evidence" and it "may choose to believe or disbelieve all, some, or none of the evidence presented"); *see Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789.

[17]*See Thetford I*, 2021 WL 278913, at *1 n.4 (describing g-button).

18

stomach. But Thetford told friends, family, doctors, and nurses that even the g-button feedings were painful for C.T.

- After the g-button placement, Thetford continued to report that C.T. had ongoing feeding problems, and C.T. was admitted to the hospital. The hospital staff set up a pump to automatically provide C.T. with nutrients via a feeding tube that hooked up to his g-button. Thetford told C.T.'s nurses that the feedings caused C.T. pain. But she did not stop there. Without the nurses' authorization, Thetford turned the feeding pump off.

- Thetford's continued reports of C.T.'s alleged feeding issues led his doctors to place a special IV to provide C.T. with intravenous sustenance known as total parenteral nutrition (TPN).[18] Thetford reported that even the TPN feedings were painful for C.T.

- To ensure insurance coverage for C.T.'s at-home TPN feedings, C.T.'s doctor recommended C.T. for hospice care. The doctor informed Thetford of the rationale behind his recommendation, and he explained that pediatric hospice could provide curative care—not just end-of-life care. Nonetheless, Thetford told C.T.'s other doctors and hospice staffers that C.T. was dying.

---

[18] *See Thetford I*, 2021 WL 278913, at *1 n.5 (describing TPN).

19

- While C.T. was receiving hospice care, Thetford decided that C.T.'s g-button and TPN feedings should be discontinued, and she communicated this decision to the hospice staffers assisting with his care.

- Thetford repeatedly asked the hospice staff to alter C.T.'s medications to "make him go to sleep and not wake up."

- When C.T. began receiving inpatient hospice care at the Ronald McDonald House, Thetford discouraged her friends and family members from bringing C.T. food. She also asked hospice staff to meet with her family members to "reinforce her desire for [C.T.] not to have anything to eat or drink, because in [Thetford's] words, it was only prolonging the inevitable."

- Thetford requested that a sign be placed on C.T.'s door at the Ronald McDonald House stating that no food or drink should be brought into his room.

- After the hospice staff excluded Thetford from C.T.'s room for an overnight observation period, and after Thetford learned that C.T. had requested and devoured a wide variety of food during that period, Thetford removed C.T. from the Ronald McDonald House and made arrangements to shift C.T. to a different hospice provider.

Each listed behavior was an affirmative, identifiable "bodily movement," and the State offered direct evidence of each. Tex. Penal Code Ann. § 1.07(a)(1) (providing that an

"[a]ct means a bodily movement . . . and includes speech"). Unlike *Rodriguez II*, the jury was not asked to merely infer from the victim's condition that the defendant's wrongful "fail[ure]" involved unproven hypothetical acts that met the relevant statutory criteria. *See Rodriguez II*, 454 S.W.3d at 508 (concluding that the jury could not have reasonably inferred acts "where there was no evidence of any such acts"). The facts of this case are thus distinguishable from those in *Rodriguez*; the record bears more similarity to that in *Roberson*. *See Roberson*, 2020 WL 5056121, at *6.[19]

In *Roberson*, the defendant was indicted for and convicted of murdering her four-year-old son by "commit[ting] an act clearly dangerous to human life that caused [his] death[,] . . . [namely,] failing to feed or provide nourishment" with the intent to cause serious bodily injury.[20] *Id.*; *see* Tex. Penal Code Ann. § 19.02(b)(2). On appeal, our sister court of appeals noted that the victim in *Rodriguez II* was an infant, but Roberson's child was four years old and could feed himself—unless he was prevented

---

[19]Although *Roberson* is an unpublished opinion with no precedential value, Tex. R. App. P. 47.7(a), "we consider unpublished opinions with similar facts instructive and cite them in agreement with their guidance as to the application of settled law." *Cain v. State*, 621 S.W.3d 75, 81 n.8 (Tex. App.—Fort Worth 2021, pet. ref'd).

[20]The relevant murder count of Roberson's indictment alleged an alternative basis for her charge as well; it alleged that Roberson committed the crime "by striking the complainant causing abrasions and contusions and scars with an object unknown to the grand jury and/or failing to feed or provide nourishment." *Roberson*, 2020 WL 5056121, at *6. After distinguishing *Rodriguez II* and discussing the evidence of Roberson's "failure," the appellate court noted that Roberson's indictment was disjunctive, and it determined that there was sufficient evidence of the alternative allegation as well. *Id.* at *6–7. For both reasons, the court held that the evidence was sufficient to support Roberson's conviction. *Id.* at *7.

from doing so. *Roberson*, 2020 WL 5056121, at \*6. And Roberson did so. Unlike the defendant in *Rodriguez II*, Roberson committed multiple affirmative, dangerous acts to starve her child: she "deliberately locked [her son] in his room when he was crying, thus preventing him from accessing food or nourishment for himself"; she put her son in a corner and prohibited him from eating unless he complied; and when she learned that her son had eaten his fill of food at a babysitter's home and did not want to leave, Roberson took him away from the babysitter. *Id.* Given the evidence of Roberson's affirmative acts to "preven[t] [her son] from eating or accessing food on his own, . . . a reasonable jury could have found that these were acts clearly dangerous to human life and caused [the son's] death." *Id.*; *see also Mallard v. State*, 162 S.W.3d 325, 329–32 (Tex. App.—Fort Worth 2005, pet. ref'd) (affirming felony murder conviction in pre-*Rodriguez II* case based on failure to stop and render aid because the evidence showed that the defendant committed this failure by "transport[ing] [the victim] to [the appellant's] home when [the victim] was seriously injured and . . . lodged in the windshield of her car, and secret[ing] him in her garage").

Similarly here, C.T. was old enough to feed himself. Indeed, C.T. demonstrated as much during his overnight observation period at the Ronald McDonald House; when allowed to feed himself, C.T. requested and ate a bean burrito with cheese sauce, a slice of cake, donut holes, and sweet tea.

And the State presented evidence that Thetford took affirmative actions to prevent C.T. from accessing food: she lied to friends, family, doctors, and hospice

22

staff; she informed hospice staff of her decision to discontinue C.T.'s g-button and intravenous feedings; she requested medications to make C.T. sleep continuously; she requested a sign on C.T.'s door barring the provision of food; she separated C.T. from the hospice staff that gave him food; and—crucially—she unilaterally turned off C.T.'s feeding pump. Rather than simply "fail[ing] to act" or "mere[ly] prepa[ring]" for the murder,[21] Thetford's actions prevented C.T. from getting the food and nutrition he needed to survive, killing him slowly each day.[22] *Cf.* Tex. Penal Code Ann. §§ 1.07(a)(34), 15.01(a).

In the circumstances of this case, then, a reasonable jury could have concluded, beyond a reasonable doubt, that Thetford's "fail[ure] to provide adequate food and/or nutrition" included affirmative "act[s] amounting to more than mere preparation that tend[ed] but fail[ed] to effect the commission of" C.T.'s murder. *Id.* § 15.01(a). Accordingly, the evidence was sufficient to prove attempted murder under *Rodriguez II*. *See Thetford II*, 2021 WL 2674484, at *1; *Rodriguez II*, 454 S.W.3d at 507–08.

---

[21]There was certainly evidence that Thetford took actions in preparation for her son's death as well. For example, the State presented evidence that Thetford purchased a casket and a headstone for his burial, she asked to move C.T. to inpatient hospice care "in part to protect [her] younger son from remembering [C.T.'s] death at home," and she "told [C.T.'s] brother that he would not ever see [C.T.] again."

[22]At trial, one hospice staffer testified that, in her experience, most terminal hospice patients "just stop[ped] eating . . . [o]n their own volition" rather than being prevented from accessing food.

## II. Conclusion

*Rodriguez II* applied the traditional *Jackson* sufficiency analysis to the facts of the case before it and concluded that there was no evidence Rodriguez's alleged failures involved any identifiable acts meeting the criteria specified in the felony murder statute. *Rodriguez II*, 454 S.W.3d at 507–08. The facts in Thetford's case are different. Applying the traditional *Jackson* sufficiency analysis to the record before us, there is sufficient evidence for a reasonable jury to conclude that Thetford's alleged "fail[ure]" involved identifiable, proven acts that met the criteria specified in the criminal attempt statute. We affirm Thetford's conviction for attempted murder. Tex. R. App. P. 43.2(a).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Publish

Delivered: March 3, 2022

24