**Opinion issued January 9, 2024**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NOS. 01-23-00091-CR & 01-23-00092-CR

———————————

**BRIAN TATUM, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 351st District Court**
**Harris County, Texas**
**Trial Court Case Nos. 1690915 & 1690916**

---

## MEMORANDUM OPINION

This appeal arises out of two felony-murder prosecutions. Brian Tatum killed

two women when he struck another car while driving at a very high rate of speed.

The jury found Tatum guilty of felony murder with respect to both deaths, and the

trial court assessed his punishment at 50 years of imprisonment, in accord with an agreement between the parties as to the appropriate punishment in these cases.

Tatum appeals his convictions on two grounds. First, he argues that the evidence is legally insufficient to prove the offenses of felony murder on the basis that the evidence is insufficient to prove the underlying felony of evading arrest or detention. Second, he argues the trial court erred in admitting into evidence expert testimony regarding the speed at which he was driving before the fatal collision.

We affirm the trial court's judgments in both of the underlying cases.

## BACKGROUND

Deputy A. Tristan of the Harris County Sheriff's Office was on patrol late one night in a marked patrol car as part of an initiative to police illegal street racing. While on patrol, Tristan came across Tatum, who pulled up to a red traffic light between two other cars. Tatum sat at the light for about ten seconds. Then Tatum and the driver of a second car went through the intersection while the traffic light remained red. Tristan testified that she had the impression that Tatum and the other driver were racing. So, Tristan turned on her lights and sirens and pursued them.

The second car, the one Tatum was racing, eventually slowed in apparent response to the patrol car's lights and sirens. But Tatum did not respond. Tristan testified that she saw Tatum use his turn signal at one point during the pursuit, and she therefore thought Tatum would be able to see her lights and hear her sirens.

2

During the pursuit, Tatum and Tristan were traveling well over the speed limit. At one point, Tristan was traveling 85 miles per hour without overtaking Tatum. The highest speed Tristan reached was 102 miles per hour. But even at that speed Tristan did not overtake Tatum, who continued to accelerate away from the patrol car.

The pursuit ended at another intersection, where Tatum collided with an oncoming car that was turning through the intersection. The collision was violent. Tatum's car ended up on its side. The rear end of the other car was practically torn off. Two female passengers in its backseat died in or soon after the collision.

After the collision, Tristan saw Tatum crawl out of the shattered windshield of his car. Tristan or her partner—Deputy V. Esqueda—then handcuffed Tatum.

When she testified, Esqueda confirmed that the patrol car's highest speed during the pursuit was 102 miles per hour. She did not know Tatum's top speed.

Esqueda testified that the weather was good that evening. She further testified that nothing obstructed the line of sight between the patrol car and Tatum's car.

After the accident, when Tatum crawled out of his car, he told Esqueda that at the initial intersection where he proceeded through despite the red light, an occupant in another car—the one that eventually slowed during the pursuit—had a firearm and fired on Tatum's car. That is why Tatum fled, he explained. Tatum also explained why he did not slow or stop during the pursuit, telling Esqueda that he had thought the patrol car was the one in which the armed occupant was riding. In other

3

words, he mistook Tristan and Esqueda's patrol car for the one with the shooter. Esqueda was incredulous and asked Tatum in somewhat colorful language how he could have mistaken a patrol car with red and blue flashing lights for the other car. Tatum acknowledged seeing the patrol car's lights but insisted that he thought the patrol car was the one with the armed occupant who had fired upon his car. The rear-seat camera of the patrol vehicle recorded this interchange between Esqueda and Tatum, and the recording was admitted into evidence and played before the jury.

At trial, both Tristan and Esqueda testified that they did not hear any gunfire at the initial intersection. They also testified that, after the collision had occurred, they did not see any bullet holes in Tatum's car while they were at the accident scene.

Detective R. Singleton of the Houston Police Department testified for the State as an accident-reconstruction expert over the defense's objection. The defense objected that the trial court "should exclude any evidence regarding the speed at which Mr. Tatum was alleged to have been driving" from Singleton's testimony. Singleton opined that the scope of the accident scene and length of its debris field indicated a high-speed collision. Based on a time-distance analysis of surveillance video footage from a gas station that recorded Tatum's car during part of the pursuit, Singleton calculated that Tatum's car was traveling between 109 and 117 miles per hour. The speed limit on this particular stretch of road was just 35 miles per hour. He stated that the speed that Deputies Tristan and Esqueda were traveling at during

4

the pursuit, as recorded by the patrol car's dash camera, corroborated his calculation. Singleton concluded that Tatum's excessive speed caused the collision at issue.

The jury found Tatum guilty of felony murder in both prosecutions. The jury also found that Tatum used a deadly weapon in the commission of these offenses. The State and Tatum agreed that his punishment should be assessed at 50 years of imprisonment in each case. Consistent with the jury's verdicts and the parties' agreement on punishment, the trial court assessed Tatum's punishment at 50 years in prison in each case and ordered that the two sentences be served concurrently.

## DISCUSSION

### I. Legal Sufficiency

Tatum argues the evidence is legally insufficient to support the jury's finding that he is guilty of the felony underlying the two felony-murder charges—evading arrest with a motor vehicle. Evading arrest requires intentional flight from a known peace officer, and Tatum maintains he did not know he fled from the police. He argues that the evidence shows he believed he was fleeing from a gunman. Given the distance between him and the pursuing patrol car and the speed of travel, Tatum argues he could not discern that he was pursued by the police rather than another.

### A. Standard of review

In reviewing a jury's verdict for evidentiary sufficiency, we must uphold its verdict if any rational trier of fact could have found all the essential elements of the

5

offense proven beyond a reasonable doubt. *Edward v. State*, 635 S.W.3d 649, 655 (Tex. Crim. App. 2021). The jury's verdict is irrational under this standard only if it is based on evidence that is not legally sufficient to support a conviction. *Id.* at 655–56; *see Cary v. State*, 507 S.W.3d 761, 766 (Tex. Crim. App. 2016) (stating appellate court's role is not to act as thirteenth juror but rather is confined to ensuring jury's verdict is rational one that is based on more than mere modicum of evidence).

In a legal-sufficiency review, we consider all the admitted evidence and view it in the light most favorable to the verdict. *Harrell v. State*, 620 S.W.3d 910, 913–14 (Tex. Crim. App. 2021). This standard recognizes it is the jury's prerogative to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.* at 914. So, we must defer to the jury's evaluation of the credibility of the witnesses and the weight to be given to various evidence. *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021).

An inference is a conclusion reached by considering other facts and deducing a logical consequence from them. *Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013). The jury may draw inferences from the evidence so long as the evidence supports each inference. *Carter v. State*, 620 S.W.3d 147, 150 (Tex. Crim. App. 2021). When the evidence supports reasonable but conflicting inferences, we presume the jury resolved the conflict in favor of its verdict, and we defer to the jury's resolution of the conflicting inferences. *Dunham v. State*, 666 S.W.3d 477,

482 (Tex. Crim. App. 2023). However, the jury's verdict cannot rest on conjecture or speculation, which are mere theorizing or guessing about the possible meaning of the facts and evidence presented, as opposed to reasonable inferences that can be drawn from the evidence admitted at trial. *Anderson*, 416 S.W.3d at 888.

Each fact need not point directly and independently to guilt, so long as the cumulative force of all the incriminating circumstances suffices to support the jury's verdict. *Walker v. State*, 594 S.W.3d 330, 335 (Tex. Crim. App. 2020). Thus, in our review, we must not use a divide-and-conquer strategy, evaluating individual bits of evidence in isolation, because this approach does not consider the cumulative force of the evidence. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). Nor does the evidence need to negate every conceivable alternative to the defendant's guilt to be sufficient. *David v. State*, 663 S.W.3d 673, 678 (Tex. Crim. App. 2022).

The law does not require a particular type of evidence. *Johnson v. State*, 560 S.W.3d 224, 226 (Tex. Crim. App. 2018). Direct and circumstantial evidence are equally probative. *Id.* Circumstantial evidence alone can be legally sufficient. *Id.* We apply the same standard of review with respect to both direct and circumstantial evidence. *Hammack v. State*, 622 S.W.3d 910, 915 (Tex. Crim. App. 2021).

**B.     Applicable law**

A person commits felony murder if he "commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the

commission or attempt, or in immediate flight from the commission or attempt, the person commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual." TEX. PENAL CODE § 19.02(b)(3). In essence, felony murder is an unintentional killing committed while committing a felony other than manslaughter. *Id.*; *Rodriguez v. State*, 454 S.W.3d 503, 507 (Tex. Crim. App. 2014); *see also Contreras v. State*, 312 S.W.3d 566, 583–84 (Tex. Crim. App. 2010) (defining essential elements of offense of felony murder based on statute's text).

A person commits the offense of evading arrest or detention if he "intentionally flees from a person he knows is a peace officer or federal special investigator attempting lawfully to arrest or detain him." PENAL § 38.04(a). If the person "uses a vehicle or watercraft" while "in flight" and has not previously been convicted of evading arrest or detention, the offense is a state jail felony. *Id.* § 38.04(b)(1)(B). Hence, evading arrest or detention in a vehicle may serve as the underlying felony in a felony-murder prosecution. *See, e.g.*, *White v. State*, 208 S.W.3d 467, 467–68 (Tex. Crim. App. 2006) (affirming in case in which felony-murder charge arose out of high-speed police pursuit and underlying felonies alleged included unauthorized use of vehicle and evading arrest or detention in vehicle).

C.    Analysis

Tatum challenges a single aspect of the legal sufficiency of the evidence. He argues the evidence is legally insufficient to show he knew that he was fleeing from

a peace officer. Accordingly, we confine our analysis to the element he challenges. *See Moore v. State*, 935 S.W.2d 124, 126 (Tex. Crim. App. 1996) (stating that in legal-sufficiency review court assesses evidence as to elements that are challenged); *Bleimeyer v. State*, 616 S.W.3d 234, 248 (Tex. App.—Houston [14th Dist.] 2021, no pet.) (concluding evidence was legally sufficient as to challenged elements).

Via a recording from the rear-seat camera of the patrol vehicle, the jury saw and heard Tatum claim that the occupant of another car shot at his car at the initial intersection where he drove through a red light. Tatum explained that he fled due to this shooting and that he thought the patrol vehicle that pursued him was the shooter.

Under the circumstances, Tatum's claim that he did not know he was fleeing from the police turns on an assessment of his credibility to a large extent. The jury is the sole judge of witness credibility, and we defer to its evaluation of witness credibility. *See Martin*, 635 S.W.3d at 679 (noting that appellate court defers to jury's credibility determinations). Here, the jury simply did not believe Tatum.

Tatum identifies various circumstances that he implicitly says makes the jury's credibility determination irrational. For example, he argues that the only reasonable inference a jury could draw is that he could not discern the police were in pursuit, given the distance between his car and the patrol car and the speed at which he was fleeing from what he believed to be a gunman who fired on him.

9

But the record contains evidence that casts doubt on Tatum's story. Tatum acknowledged that he saw the patrol car's lights during the pursuit, stating "I seen your lights" to Deputy Esqueda more than once. Reasonable jurors could have found that Tatum knew he was being pursued by police based on his admission that he saw the patrol car's lights, and the jury in this case did so find. In addition, even without Tatum's admission, Deputy Tristan testified that she could see Tatum's turn signal in a turn, which led her to believe that Tatum would have seen the patrol car's lights and heard its sirens. Moreover, the jury was not obliged to accept the basic premise of Tatum's explanation for his flight—that he was fleeing a dangerous situation involving gunfire. Both Deputies Tristan and Esqueda testified that neither heard gunfire at the initial intersection nor saw bullet holes in Tatum's car at the scene of the collision, even though Tatum claimed he was fired on at point-blank range. So, the jury could have reasonably found that Tatum was street racing, as Tristan suggested, and knew peace officers were attempting to detain him near the outset.

On this record, we conclude the evidence is legally sufficient to allow a jury to reasonably find that Tatum knew he was fleeing from a peace officer. *See, e.g.*, *Hobyl v. State*, 152 S.W.3d 624, 627–28 (Tex. App.—Houston [1st Dist.] 2004) (rejecting motorcyclist's contention that evidence was insufficient to show he knew he was being pursued by police in light of various circumstances affecting his perception—high rate of speed, reduced ability to hear resulting from engine, wind,

10

flapping rain suit, and helmet, and reduced visibility due to helmet and crouched-down position—based on other evidence in record), *pet. dism'd*, 193 S.W.3d 903 (Tex. Crim. App. 2006); *see also Thompson v. State*, 426 S.W.3d 206, 209–10 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (holding that evidence of evasion was legally sufficient to support conviction because fact that driver was intoxicated could not be used to negate element that he knew he was fleeing peace officer due to law on involuntary intoxication but also because jury could have reasonably chosen to credit circumstantial evidence indicating that driver was in fact aware of peace officer's attempt to detain him).

## II. Admissibility of Evidence

Tatum complains about multiple aspects of Detective Singleton's testimony. In particular, Tatum argues that the trial court erred in admitting into evidence Singleton's expert testimony concerning the speed at which Tatum was driving because Singleton is unqualified, and his methodology is unreliable. Tatum posits that the admission of this evidence was harmful due to its scientific nature and the significant impact that expert testimony likely had on the jury's deliberations.

### A. Standard of review and applicable law

To obtain appellate review of an evidentiary ruling admitting evidence, a party must properly preserve error in the trial court by objecting to its admission. TEX. R. EVID. 103(a)(1)(A); TEX. R. APP. P. 33.1(a)(1); *Sandoval v. State*, 665 S.W.3d 496,

546 (Tex. Crim. App. 2022). The party's appellate complaint must be the same as his trial objection. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012).

When error is preserved, we review a trial court's evidentiary rulings, including those concerning expert opinions and testimony, for an abuse of discretion. *See Valadez v. State*, 663 S.W.3d 133, 143 (Tex. Crim. App. 2022) (stating trial court's decision to admit or exclude evidence is reviewed for abuse of discretion); *Wolfe v. State*, 509 S.W.3d 325, 335 (Tex. Crim. App. 2017) (stating trial court's ruling on admissibility of expert testimony is reviewed for abuse of discretion).

Even if the trial court erred, we cannot reverse based on an error that is not of constitutional magnitude unless it affects the complaining party's substantial rights. TEX. R. APP. P. 44.2(b). An error affects substantial rights only if it has a substantial and injurious effect or influence on the jury's verdict. *Stredic v. State*, 663 S.W.3d 646, 655 (Tex. Crim. App. 2022). Hence, if we have fair assurance from our examination of the record as a whole that the error did not influence the jury or had but a slight effect on the jury's verdict, then the error is not a basis for reversal. *Id.*

### B.    Analysis

Tatum's objection to Singleton's testimony at trial was limited to the contention that the trial court "should exclude any evidence regarding the speed at which Mr. Tatum was alleged to have been driving." Therefore, this is the lone complaint Tatum has preserved for appellate review as to Singleton's testimony.

*Clark* 365 S.W.3d at 339; *see also Williams v. State*, 662 S.W.3d 452, 460 (Tex. Crim. App. 2021) (reiterating that preservation of error is systemic requirement that court of appeals must consider regardless of whether parties raise preservation).

Assuming for argument's sake that the trial court erred in admitting Singleton's testimony about the speed at which Tatum was driving, the record gives us fair assurance that this ostensible error did not influence the jury's verdicts. *See, e.g.*, *Pugh v. State*, 624 S.W.3d 565, 566 (Tex. Crim. App. 2021) (assuming without deciding that evidence was inadmissible but holding any error was harmless).

Tatum's speed is not an element of the charged offenses of felony murder. Nor is his speed an element of the underlying felony of evading arrest or detention. The jury did not have to find Tatum drove at a particular speed to find him guilty.

It is undisputed that Tatum drove faster than the deputies who were pursuing him, and the evidence at trial showed their top speed was 102 miles per hour. Even at that speed, the deputies were unable to overtake Tatum. Thus, the jury could have reasonably inferred that Tatum's speed exceeded 102 miles per hour at one point.

It also is undisputed that the collision that ended the pursuit was catastrophic. The rear end of the other car was practically torn off and the two female passengers riding in the back seat were ejected and died either immediately or soon afterward.

In short, the evidence discloses no basis for reasonable doubt with respect to the basic facts concerning Tatum's high speed and its tragic consequences.

Singleton's testimony regarding Tatum's speed—that he drove between 109 and 117 miles per hour—is not unlike cumulative evidence, which cannot serve as a basis for reversal when much the same evidence is presented to the jury without objection. *See Mayes v. State*, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991) (agreeing that inadmissible evidence can be rendered harmless if other evidence is admitted without objection that proves same fact that inadmissible evidence sought to prove); *see, e.g.*, *Duncan v. State*, 95 S.W.3d 669, 672 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (observing that similar evidence as to same facts was presented without objection and thereby cured any error in admitting challenged evidence).

Based on the record as a whole, we hold that the challenged testimony did not affect Tatum's substantial rights. Therefore, any error in admitting this testimony was harmless and does not constitute a basis for reversing Tatum's convictions.

## CONCLUSION

We affirm the trial court's judgments.

Gordon Goodman
Justice

Panel consists of Justices Goodman, Rivas-Molloy, and Guerra.

Do not publish. TEX. R. APP. P. 47.2(b).